EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br>Carlos Candelaria Rosa | 2016 TSPR 29<br><br>197 DPR ____ |

Número del Caso: AD-2015-1

Fecha: 1 de marzo de 2017

Abogados del Querellado:

      Lcdo. Virgilio Mainardi Peralta
      Lcdo. José A. Rivera Rodríguez

Oficina de Asuntos Legales
Oficina de Administración de los Tribunales:

      Lcda. Cristina Guerra Cáceres
      Directora

      Lcda. Rosa Cruz Niemiec

Comisión de Disciplina Judicial:

      Hon. Aída N. Molinary de la Cruz, Presidenta
      Lcda. Lourdes Velázquez Cajigas
      Lcda. Evelyn Benvenutti Toro
      Lcdo. José Miranda de Hostos
      Sra. Carmen E. Sierra Corredor

Materia: Suspensión de empleo y sueldo de tres meses de Juez de Apelaciones por violar los Cánones 1, 3, 6, 8 y 14 del Código de Ética Judicial, 4 LPRA Ap. IX.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su

distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos Candelaria Rosa

AD-2015-1

PER CURIAM

En San Juan, Puerto Rico, a 1 de marzo de 2017.

Hoy nos vemos obligados a ejercer nuestra facultad constitucional de disciplinar a un juez que incurrió en una conducta que no solo infringe los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, sino que, además, atenta contra el principio de obediencia jerárquica sobre el cual pende nuestro sistema judicial. Luego de evaluar la querella presentada en contra del Juez Carlos Candelaria Rosa, el informe de la Comisión de Disciplina Judicial y los alegatos de las partes, decretamos su suspensión de empleo y sueldo por el término de tres meses.

I

El juez Candelaria Rosa fue admitido al ejercicio de la abogacía el 15 de enero de 1997. El 27 de noviembre de 2006 juramentó como Juez Superior del Tribunal de Primera Instancia. Posteriormente, el 27 de junio de 2014, juramentó al cargo de Juez del Tribunal de Apelaciones, posición que ocupa actualmente.

En octubre de 2010, mientras el juez Candelaria Rosa aún se desempeñaba como Juez Superior en el Centro Judicial de Ponce, presidió un juicio por jurado en el caso criminal <u>Pueblo v. Héctor Cordero Cruz y otros</u>. Durante el juicio, se suscitó un incidente donde el juez Candelaria Rosa ordenó a los abogados de las partes que se sentaran en sus respectivas bancas y guardaran silencio en espera de que el jurado abandonara la sala. No obstante, según surge de la sentencia sobre desacato que dictó el juez Candelaria Rosa el 13 de octubre de 2010, el Lcdo. Armando Pietri Torres, abogado de defensa en el procedimiento, se mantuvo de pie "con gesto de eminente desafío a la autoridad judicial y actitud arrogante que exhibió menosprecio al decoro, solemnidad y respeto debido a la Sala de Justicia" en presencia del jurado. <u>Informe de la Comisión de Disciplina Judicial</u>, pág. 8. También, el licenciado Pietri Torres sobrepuso su voz en tono alto y realizó expresiones desdeñosas que, según el magistrado, "intimaron parcialidad del Tribunal en la resolución de objeciones a favor del Fiscal y displicencia judicial a

favor de las actuaciones del Ministerio Público". Informe de la Comisión de Disciplina Judicial, pág. 8.

Por esa razón, el juez Candelaria Rosa encontró incurso en desacato criminal al licenciado Pietri Torres y lo sentenció sumariamente a una pena de diez días-multa, a razón de cuarenta y cuatro dólares por cada día-multa, para un total de cuatrocientos cuarenta dólares. Además, le concedió al letrado hasta el 15 de octubre de 2010 a las cinco de la tarde para efectuar el pago de la sanción.

Insatisfecho con esa decisión, el licenciado Pietri Torres recurrió al Tribunal de Apelaciones. El 17 de diciembre de 2010, el Panel VI de la Región Judicial de Ponce del Tribunal de Apelaciones, compuesto por la Hon. Olga Birriel Cardona y los entonces jueces Carlos J. López Feliciano y Sixto Hernández Serrano, emitió una sentencia en la que revocó la determinación de desacato criminal del juez Candelaria Rosa. El foro apelativo intermedio entendió que la conducta del licenciado Pietri Torres fue provocada por unos comentarios del Ministerio Público, por lo que su proceder en realidad no fue un reto a la autoridad del Tribunal. Por esa razón, el Tribunal de Apelaciones concluyó que el incidente no tuvo la gravedad que el juez Candelaria Rosa le atribuyó. El foro apelativo intermedio precisó que el Tribunal de Primera Instancia debió ejercer mayor control en el manejo del caso y pudo llamarle la atención a los abogados y advertirles de las consecuencias a las que se exponían, tan pronto percibió

que podría perder el control en la sala. <u>Informe de la Comisión de Disciplina Judicial</u>, pág. 9.

En respuesta a esa sentencia del Tribunal de Apelaciones, el juez Candelaria Rosa determinó inhibirse *motu proprio* de todos los casos en los que participara el licenciado Pietri Torres. En su resolución de inhibición de 13 de enero de 2011, el juez Candelaria Rosa expresó, en lo pertinente, lo siguiente:

> [R]esulta alucinante como desde el edificio del Tribunal de Apelaciones, ubicado en la calle César González de San Juan, los Jueces miembros del panel apelativo que cubre el distante Centro Judicial de Ponce han podido aquilatar mejor, para disculpar, el comportamiento del Lcdo. Pietri, a pesar que en la Sentencia de Desacato se certifica haber visto dicho proceder directamente y haberlo descrito como un enfrentamiento al Tribunal de pie, con gesto de desafío y arrogancia a la vez que con menosprecio al decoro, la solemnidad y el respeto debido.
> […]
>
> Soy del criterio de que la Sentencia del Tribunal de Apelaciones trasluce que el panel actualmente designado a Ponce, tal vez sin saberlo, participa de una visión distorsionada de la función judicial que propone un paradigma de Juez pusilánime, que no se ajusta a nuestro sistema de justicia pues se aleja del ideal de equilibrio reflexivo contenido de la prudencia, que es la virtud de umbral requerida a los jueces.
>
> […]
>
> No obstante, la Sentencia del Tribunal de Apelaciones se descanta por dicho modelo de pusilanimidad judicial, a lo mejor sin cobrar noticia de ello, aunque no por inadvertida deja de tener tal noción judicial el mismo efecto adverso. Lleva la razón Trías al decir que "[e]l Juez no podrá o no preocuparse por los problemas de la teoría del derecho, pero, quiera o no, tendrá, consciente o inconscientemente, su propia filosofía jurídica que irremediablemente

intervendrá en la emisión de sus fallos." [Nota al calce número 4, Trías Monge, Teoría de la Adjudicación, Ed. UPR, San Juan, 2000, pág. 2] No cabe dudas de que la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez al que aquí se hace alusión. La posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a Trías en cuanto a que "[e]l Juez sonámbulo camina por terreno minado." [Nota al calce número 5, Id., pág. 3].

Más aún, dicho concepto de juez timorato generado por la Sentencia del Tribunal de Apelaciones tiene el efecto de animar el irrespeto ya que, como advierte Dworkin, lo jurídico es a fin de cuentas materia de derechos y deberes sancionados en un Tribunal. […] Aquí el Tribunal de Apelaciones adjudicó que el Lcdo. Pietri no tenía que obedecer las órdenes del juez que suscribe, ergo, le confirió al abogado ese derecho y a este Tribunal el deber de conformarse. Estimo que esta norma deformada de quehacer judicial, inspirada en la concepción de Juez pusilánime que le sirve de sustrato, tiene vigencia actual y potencial porque planeará sobre los casos futuros en los que intervenga el Lcdo. Pietri ante este Tribunal. Si no por sus propios términos, porque la designación del panel de Jueces de Apelaciones que la ha generado aconteció tan reciente como el pasado 13 de diciembre de 2010, mediante la Orden núm. DJ2010-440 y con toda probabilidad permanecerá inalterado, a la vez que presto a reproducir su angustiosa concepción de apocamiento judicial.

[…] Resulta palmario que la ostensible sumisión del criterio judicial a la voluntad irrestricta de acatar o no órdenes judiciales conferida por la Sentencia del Tribunal de Apelaciones al Lcdo. Pietri, mina la confianza pública en el sistema de justicia, que tiene como base fundamental la independencia judicial y el consecuente poder de dirigir el curso de los trabajos en una Sala de Justicia. Asimismo, la privación de autoridad que la Sentencia Revocatoria perpetra a este Tribunal con respecto al Lcdo. Pietri para, entre las cosas, ordenar su desempeño con alguna pretensión de acatamiento, podría tener el efecto de arrojar dudas sobre la imparcialidad del Tribunal en futuros casos de éste, tanto porque el

Ministerio Público pueda especular que el Tribunal esté impedido de actuar con respecto a dicho abogado, como porque coacusados de delitos puedan especular que el Tribunal mantenga alguna animosidad contra el mismo.

En consecuencia, a base del referido Canon 20(i), **y sobre todo porque este Tribunal participa y practica una concepción de Juez que tiene que ver con toda la dignidad, gallardía y prudencia judicial, mientras que nada con la teoría de pusilanimidad judicial subyacente en la Sentencia del Tribunal de Apelaciones,** resulta forzoso resolver la INHIBICIÓN motu proprio de quien suscribe en todos los casos en que esté involucrado el Lcdo. Armando F. Pietri Torres. (Énfasis Suplido). Informe de la Comisión de Disciplina Judicial, págs. 9-11.

El juez Candelaria Rosa notificó esa resolución de inhibición a la Jueza Administradora de la Región Judicial de Ponce, a la Jueza Coordinadora de Asuntos de lo Penal y a las partes. Posteriormente, el licenciado Pietri Torres presentó una apelación en el caso criminal ante el Tribunal de Apelaciones e incluyó esa resolución como parte del apéndice. Fue en ese momento que la jueza Birriel Cardona y los entonces jueces Serrano Hernández y López Feliciano, advinieron en conocimiento de la resolución del juez Candelaria Rosa. De esa forma, el 2 de febrero de 2011 emitieron una resolución en la que expresaron, entre otras cosas, que las palabras del juez Candelaria Rosa en su resolución de inhibición estaban "dirigidas a cuestionar la integridad y capacidad profesional de los Jueces que integran este Panel". Informe de la Comisión de Disciplina Judicial, pág. 12. Por esa razón, enviaron copia de su resolución al entonces Juez Presidente, Federico Hernández Denton, para que

determinara si procedía iniciar un procedimiento disciplinario contra el juez Candelaria Rosa.[1] El Juez Presidente refirió el asunto a la entonces Directora Administrativa de los Tribunales, Hon. Sonia I. Vélez Colón, para el inicio de una investigación conforme a la Regla 5(c) de las Reglas de Disciplina Judicial. 4 LPRA Ap. IV-B, R.5(c).

El 20 de noviembre de 2013, tras completar la investigación, la entonces jueza Vélez Colón, en su capacidad como Directora Administrativa de los Tribunales,

---

[1] El 24 de octubre de 2014, revisamos la sentencia del Tribunal de Apelaciones en el caso criminal. CC-2013-0360. En ese entonces expresamos, en lo aquí concerniente, lo siguiente:

> Es pertinente mencionar que el Lcdo. Pietri Torres alegó que el Fiscal manifestó frente al jurado que sus objeciones se debían a que este tenía miedo. Véase Alegato del Peticionario, pág. 12. Según se desprende de la transcripción del cuarto día del juicio esto fue […] [planteado] ante el Juez en ausencia del jurado y este impartió una instrucción en cuanto a que no se debía hablar en presencia del jurado sobre el caso. […] Entendemos que el Juez manejó correctamente la situación y que la misma no amerita mayor discusión […]. Pág. 31, n.44

> […]

> [E]s menester señalar que el Tribunal de Apelaciones no fue cuidadoso al distinguir entre los incidentes ocurridos en presencia o ausencia del jurado […]. Pág. 34

> […]

> En otras palabras, de las transcripciones revisadas no podemos colegir que las actuaciones del juzgador laceran la calma y la imparcialidad que deben caracterizar un procedimiento criminal. Pág. 35.

determinó archivar la queja contra el juez Candelaria Rosa. Esa determinación fue notificada al Juez Presidente. Luego de varios incidentes procesales, este Tribunal determinó, en Ex parte Comunicación del Lcdo. Carlos J. López Feliciano, 191 DPR 882 (2014), que los jueces del Tribunal de Apelaciones que refirieron el asunto al Tribunal Supremo eran parte promovente, por lo que debían ser notificados de los resultados de la queja que se presentó contra el juez Candelaria Rosa y de la decisión de archivarla. Estos, a su vez, tendrían la oportunidad de conocer el estado de su referido y, de entenderlo necesario, solicitar reconsideración de la decisión emitida. Así las cosas, el licenciado López Feliciano presentó una solicitud de reconsideración, la cual fue acogida por la Oficina de Administración de los Tribunales (OAT).

Como resultado, se dejó sin efecto el archivo de la queja y continuó el procedimiento disciplinario. El 4 de febrero de 2015, luego de la investigación correspondiente, la Directora Administrativa de los Tribunales presentó un informe sobre la conducta del juez Candelaria Rosa. La Presidenta de la Comisión de Disciplina Judicial designó a la Lcda. Delia Lugo Bougal para que evaluara ese informe y determinara si existía causa probable para presentar una querella contra el juez Candelaria Rosa. El 18 de febrero de 2015, la licenciada Lugo Bougal determinó que existía causa probable para

iniciar un procedimiento disciplinario contra el magistrado por posibles violaciones de los Cánones 6, 8, 14 y 23 de Ética Judicial, 4 LPRA Ap. IV-B. Por consiguiente, el 2 de mayo de 2015 la OAT presentó una querella contra el juez Candelaria Rosa, en la que le imputó los siguientes cargos:

### Primer Cargo

El Querellado, al manifestar en una Resolución de Inhibición su malestar con el Panel del Tribunal de Apelaciones por haber revocado su determinación de desacato y al utilizar para ello adjetivos tales como "pusilánimes", "apocados" y "timoratos", se alejó del respeto mutuo, la cordialidad y la colaboración profesional requerida por el Canon 6 de Ética Judicial. Sus manifestaciones constituyeron críticas infundadas contra sus compañeros jueces y juezas que lesionaron la imagen de respeto y dignidad que debe existir entre los miembros de la Judicatura en violación a los Cánones 6, 14 y 23 de Ética Judicial.

### Segundo Cargo

En virtud de las manifestaciones realizadas públicamente en su Resolución de Inhibición, que incluyeron acusar al Tribunal de Apelaciones de adoptar una "noción distorsionada de la función judicial", un "modelo de pusilanimidad judicial", una "angustiosa concepción de apocamiento judicial" y una "noción castrada de Juez", el Querellado faltó al deber de comportarse de acuerdo a las más altas normas de respeto, decoro, prudencia, serenidad y solemnidad requeridas a los miembros de la Judicatura por el Canon 8. Asimismo, incumplió con su obligación de demostrar la circunspección requerida por el Canon 14, así como con el deber de no deshonrar el cargo judicial. De esa forma, el Querellado infringió los Cánones 8, 14, y 23 de Ética Judicial.

El 15 de marzo de 2015, el juez Candelaria Rosa presentó su contestación a la querella y negó los cargos imputados. Alegó que sus expresiones no fueron dirigidas a

sus compañeros jueces sino que "constituyeron un intento de exponer una diferencia conceptual y de visión". <u>Informe de la Comisión de Disciplina Judicial</u>, pág. 3. El magistrado y la Oficina de Asuntos Legales de la OAT presentaron una moción conjunta ante la Comisión de Disciplina Judicial en la que indicaron que no existían controversias de hecho y que deseaban someter el asunto mediante memorandos de Derecho. La Comisión de Disciplina Judicial accedió a esa solicitud. Así, el 8 de junio de 2015 las partes presentaron un documento en el que estipularon los hechos narrados en este memorando.

El 8 de septiembre de 2015, la Comisión de Disciplina Judicial presentó su informe. Determinó que no existía prueba clara, robusta y convincente de que el juez Candelaria Rosa incurrió en violaciones éticas que ameritaran la imposición de sanciones disciplinarias. Esa conclusión estuvo fundamentada, en parte, en que "un caso aislado no constituye prueba clara, robusta y convincente para establecer que hubo una violación a los Cánones de Ética Judicial por parte del juez Candelaria Rosa". <u>Informe de la Comisión de Disciplina Judicial</u>, pág. 20. De esta forma, la Comisión de Disciplina Judicial calificó lo ocurrido como un simple "error de juicio del juez Candelaria Rosa". <u>Informe de la Comisión de Disciplina Judicial</u>, pág. 20.

No obstante, la Comisión de Disciplina Judicial determinó que las expresiones del juez Candelaria Rosa "no

fueron acertadas y que pudiera considerarse que se excedió en la forma vehemente de defender su posición". Informe de la Comisión de Disciplina Judicial, pág. 19. Además, concluyó que: (1) las expresiones del juez Candelaria Rosa fueron "desatinadas"; (2) este "no utilizó el medio apropiado y adecuado para exponer su posición"; (3) "sus palabras podrían ser interpretadas por sus compañeros jueces como un ataque dirigido a cuestionar su integridad o capacidad", y (4) "el lenguaje utilizado por el juez Candelaria Rosa para plasmar su diferencia de criterio pudo haber provocado incomodidad en el ánimo del Panel de Jueces del Tribunal de Apelaciones". Informe de la Comisión de Disciplina Judicial, págs. 16-18. Por esa razón, la Comisión de Disciplina Judicial recomendó la desestimación y archivo de la querella, con el apercibimiento al juez Candelaria Rosa de que en el futuro fuera más cuidadoso en su estilo de redacción para evitar posibles ofensas en sus dictámenes. Informe de la Comisión de Disciplina Judicial, pág. 20.

El 1 de octubre de 2015, el juez Candelaria Rosa presentó un escrito en el que se allanó al informe y a la recomendación de la Comisión de Disciplina Judicial. Además, expresó que el proceso disciplinario había sido aleccionador y que en el futuro sería más cuidadoso con su estilo de redacción. Igualmente, el magistrado ofreció sus disculpas y manifestó que sus expresiones en la resolución de inhibición solo fueron un intento de exponer de forma

fundamentada las razones por las cuales su inhibición constituía la mejor forma de salvaguardar la imparcialidad del Tribunal. Finalmente, el juez Candelaria Rosa nos pidió que tomáramos en consideración que este es su primer procedimiento disciplinario y que no existen quejas, querellas o reclamaciones pendientes en su contra.

No obstante, tras estudiar el Informe de la Comisión de Disciplina Judicial y el resto de los documentos en el expediente, determinamos que, además de lo imputado originalmente en la querella, la conducta del juez Candelaria Rosa podía ser contraria a los Cánones de Ética Judicial, supra, por otros fundamentos. Consecuentemente, se devolvió la querella a la Comisión de Disciplina Judicial con la encomienda de evaluar el texto de la resolución de inhibición para determinar si de las expresiones hechas por el magistrado surgía que utilizó el mecanismo de inhibición *motu proprio* como un subterfugio para retirarse del procedimiento judicial que presidía y de todos en los que participara el licenciado Pietri Torres debido a su insatisfacción con el dictamen del Tribunal de Apelaciones. Además, debía evaluar si ese proceder transgredió los Cánones 1, 3 y 8 de Ética Judicial, supra, los cuales no fueron imputados en la querella presentada originalmente por la OAT. También, en aras de salvaguardar el debido proceso de ley, se le instruyó a la Comisión de Disciplina Judicial que brindara

al juez Candelaria Rosa la oportunidad de responder y defenderse adecuadamente de estos señalamientos.

De conformidad con nuestra directriz, el 8 de diciembre de 2015 la Comisión de Disciplina Judicial procuró que el juez Candelaria Rosa y la OAT expresaran su posición al respecto. Oportunamente, el 21 de diciembre de 2016 el juez Candelaria Rosa presentó un escrito titulado "Moción en Cumplimiento de Orden Exponiendo Posición". En su escrito afirmó que "su inconformidad confesa" con la resolución revocatoria del foro apelativo intermedio no constituyó razón o fundamento para dictar su inhibición. Moción en Cumplimiento de Orden Exponiendo Posición, pág. 2. Asimismo, aclaró que sus expresiones, "lejos de pretender circunvalar el rigor del mandato emitido por el Tribunal de Apelaciones, o pretender una velada forma de librarse de la responsabilidad ministerial que le obligaba, constituyó la manifestación expresa de la pulcritud, transparencia, imparcialidad y objetividad que este guarda al sistema de justicia". Íd. Por su parte, la OAT no presentó escrito alguno. Resolución de la Comisión de Disciplina Judicial de 3 de febrero de 2016, pág. 2.

Luego de analizar el escrito del juez Candelaria Rosa, la Comisión de Disciplina Judicial expuso que, según su criterio, no existía evidencia clara, robusta y convincente de que el fundamento para la inhibición del magistrado hubiera sido su insatisfacción con la decisión emitida por el Tribunal de Apelaciones. Íd. Concluyó que

la inhibición del juez Candelaria Rosa "estuvo dirigida a salvaguardar la imagen de imparcialidad del sistema judicial, así como evitar cualquier apariencia de prejuicio o arbitrariedad en procesos judiciales futuros en los que participara el licenciado Pietri Torres". Íd., pág. 3. Así pues, la Comisión sostuvo su recomendación inicial de desestimar y archivar la querella ya que, a su entender, la conducta del magistrado no infringió los Cánones de Ética Judicial, supra. Resolución de la Comisión de Disciplina Judicial de 3 de febrero de 2016, pág. 4. De igual forma, sugirió nuevamente apercibir al juez Candelaria Rosa "de ser más cuidadoso en su estilo de redacción para evitar posibles ofensas en sus dictámenes". Íd.

Acogidas las determinaciones de hecho contenidas en el informe de la Comisión y evaluadas las recomendaciones allí señaladas, procedemos a resolver.

II

La Constitución de Puerto Rico, Art. V, Sec. 11, Const. de Puerto Rico, LPRA, Tomo 1, le confiere a este Tribunal la autoridad de atender los procedimientos disciplinarios relacionados con los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Para llevar a cabo esa función aprobamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B. Estos asignan ciertos deberes a los jueces con el fin de promover la confianza de los ciudadanos en nuestro sistema judicial. In re Sierra

Enriquez, 185 DPR 830, 850 (2012); In re Claverol Siaca, 175 DPR 177, 188 (2009). "En el preámbulo de dichos cánones se reconoce la importancia de la función judicial y se impone a los jueces el deber y la responsabilidad de aceptar ciertas restricciones a su conducta, tanto en el ámbito de sus funciones judiciales como en otras actividades profesionales y personales". In re Claverol Siaca, supra. La confianza que deposita el Pueblo en la justicia exige que los jueces actúen correctamente y promuevan la impresión de que actúan conforme a los más altos niveles de principios morales. In re Maldonado Torres, 152 DPR 858, 867 (2000). Por tal razón, estos deben actuar con el más escrupuloso sentido de responsabilidad que impone el cargo que ejercen.

Nuestro ordenamiento ético disciplinario requiere la existencia de prueba clara, robusta y convincente de que hubo violaciones éticas para imponer sanciones disciplinarias. In re Quiñones Artau, Op. de 29 de junio de 2015, 2015 TSPR 84, pág. 18, 193 DPR ___ (2015); In re Muñoz, Morell, 182 DPR 738, 750 (2011). Ese estándar es más alto y sólido que el de preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de duda razonable. In re Salas Arana, 188 DPR 339, 347 (2013). Aunque puede resultar difícil establecer una definición precisa, hemos descrito la prueba clara, robusta y convincente como "aquella evidencia que produce en el juzgador de hechos una convicción duradera de que

las contenciones fácticas son altamente probables". In re Martínez Almodóvar, 180 DPR 805, 820 (2011).

Por otro lado, en múltiples ocasiones hemos manifestado que no alteraremos las determinaciones de hecho de la Comisión de Disciplina Judicial o de un Comisionado Especial, excepto que se demuestre parcialidad, prejuicio o error manifiesto. In re Maldonado Torres, 152 DPR 858, 869 (2000). Esa norma responde a que la Comisión de Disciplina Judicial y los Comisionados Especiales ocupan el papel de juzgador de primera instancia y, por lo tanto, están en mejor posición para aquilatar la prueba testifical. In re Ortiz Burnet, 152 DPR 542, 548 (2000). No obstante, cuando las determinaciones de hecho están basadas en prueba documental, estamos en igual posición que estos para hacer nuestras propias apreciaciones "y no podemos renunciar a ello sin afectar la efectividad de nuestra función disciplinaria". Íd., pág. 549. De esa forma, no estamos obligados a acoger el informe que nos presente la Comisión de Disciplina Judicial, sino que podemos adoptar, modificar o rechazar su informe. In re Maldonado Torres, supra.

Los hechos particulares de este procedimiento demuestran que las partes sometieron el caso a base del expediente, por lo que no fue necesario celebrar una vista evidenciaria. Las partes presentaron ante la Comisión de Disciplina Judicial sus estipulaciones de hecho y sus

respectivos memorandos de Derecho. Así pues, este Tribunal se encuentra en igual posición que la Comisión de Disciplina Judicial para evaluar las expresiones que realizó el juez Candelaria Rosa en su resolución de inhibición.

III

El Canon 6 de Ética Judicial, 4 LPRA Ap. IV-B, C.6, regula el comportamiento entre los jueces de nuestro sistema judicial. En particular, este canon dispone que la conducta de los jueces y juezas "estará enmarcada en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones dentro del sistema judicial". Íd. Este canon también establece que los jueces y juezas se abstendrán de hacer "críticas infundadas que tiendan a menospreciar el prestigio de sus compañeros jueces o compañeras juezas". Íd. Los comentarios de este canon lo enmarcan bajo el entendido de que "el correcto ejercicio de las funciones adjudicativas de los jueces supone actuar de manera cordial, serena, prudente y respetuosa". Íd.

De modo similar, el Canon 14 de Ética Judicial, 4 LPRA Ap. IV-B, C.14, modela la conducta que deben mantener los jueces en el transcurso de los procesos judiciales. En lo pertinente dispone que

> [l]as juezas y los jueces mantendrán su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesiva. Tampoco harán comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos

comentarios, expresiones o gestos que envuelvan burla o mofa. No ridiculizarán de modo alguno a abogadas, abogados, partes, testigos, funcionarias o funcionarios del tribunal ni a otras personas que acudan ante el tribunal.

En ese sentido, hemos dejado claro que los jueces tienen "el deber de tratar con consideración y respeto a los abogados, a cualquier persona que comparezca ante el tribunal y a los funcionarios de la Rama Judicial". In re Quiñones Artau, supra, pág. 15. Así, los jueces vienen obligados a preservar la dignidad de los procedimientos judiciales y promover un comportamiento regido por el respeto mutuo. In re Maldonado Torres, supra, pág. 865. De igual forma, el Canon 14, supra, prohíbe expresamente que los jueces lleven a cabo acciones que pongan en ridículo, se burlen o ridiculicen a los funcionarios que integran la Rama Judicial. Íd.

Es responsabilidad de los miembros de la Judicatura que su comportamiento se caracterice por el respeto mutuo y que esté dirigido a preservar la dignidad de los procesos judiciales. In re Quiñones Artau, supra. Por lo tanto, todas las personas involucradas en el proceso judicial —entiéndase jueces, testigos, abogados y funcionarios del tribunal— tienen el deber de mostrar un comportamiento cortés hacia los demás participantes. In re Saavedra Serrano, 165 DPR 817, 829 (2005). Lo anterior, simplemente, no puede ser de otra manera. De lo contrario, un ambiente judicial tolerante de la mofa y el irrespeto entre quienes vienen llamados a administrar prudentemente

la justicia ultraja la confianza de la ciudadanía en tan importante pilar del sistema democrático. Ahora bien, en este contexto, respeto no es adular ni rendir pleitesía sino reconocer la calidad humana de las personas que componen nuestro sistema de justicia para que impere entre ellos un trato digno, cordial y a la altura de la función que realizan los tribunales. En pocas palabras, es conducirse con la solemnidad que requiere el cargo.

De manera análoga, el Canon 23 de Ética Judicial, 4 LPRA Ap. IV-B, C.23, requiere que el comportamiento de los jueces en público no ponga en duda su capacidad para ejercer su función adjudicativa de manera imparcial. También les exige que sus actuaciones extrajudiciales no deshonren el cargo judicial que ocupan ni interfieran con el desempeño de sus funciones. Íd. "Este canon va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza públicas que gozan los miembros de la Judicatura". In re Claverol Siaca, supra, pág. 190. La función judicial demanda un tipo de comportamiento, tanto dentro como fuera del tribunal, que enaltezca el cargo judicial y fomente el respeto hacia este. Íd.; Véase, además, In re Cruz Aponte, 159 DPR 170 (2003); In re Nevárez Zavala, 123 DPR 511 (1989).

Finalmente, debemos señalar que el respeto a los tribunales no implica el establecimiento de una censura previa. Por el contrario, la crítica sana y oportuna de la Rama Judicial es una herramienta necesaria para sujetar a

los jueces al estricto cumplimiento de sus funciones. Sin embargo, "tales críticas no pueden traspasar los límites de la civilidad y corrección, actitudes o conducta que los jueces no vienen obligados a tolerar". In re Hon. Maldonado Torres, 152 DPR 858, 869 (2000).

En su resolución de inhibición, el juez Candelaria Rosa exteriorizó su inconformidad con la sentencia del Tribunal de Apelaciones. Comenzó por expresar que el Panel VI de la Región Judicial de Ponce "particip[ó] de una visión distorsionada de la función judicial, que propone un paradigma de Juez pusilánime" y denunció que la referida sentencia se "decant[ó] por dicho modelo de pusilanimidad judicial". Por lo tanto, entendió "que la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez" y constituyó una "norma deformada de quehacer judicial". Más aún, precisó que "dicho concepto de juez timorato generado por la Sentencia del Tribunal de Apelaciones tiene el efecto de animar el irrespeto". Además, señaló que "la posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a[l ex juez Presidente del Tribunal Supremo, José] Trías [Monge] en cuanto a que el Juez sonámbulo camina por terreno minado".

Reconocemos que el juez Candelaria Rosa quiso consignar los fundamentos de su diferencia de criterio con el Tribunal de Apelaciones y "nunca quiso pretender el

significado literal de sus palabras, ni mucho menos faltar el respeto mutuo y cordialidad entre los jueces[…] y descreditar al Sistema Judicial". Memorando de Derecho, pág. 1. Sin embargo, este Tribunal no puede abstraerse de los resultados y consecuencias de las palabras del juez. Es inescapable notar que el lenguaje que el magistrado empleó para plasmar sus diferencias no fue el apropiado y, con razón, provocó malestar entre sus compañeros jueces del foro apelativo intermedio. Aunque las referencias al concepto del juez "pusilánime" y "castrado" cuestionan los efectos que sobre él tendría el razonamiento del Tribunal de Apelaciones, encontramos otras expresiones que sobrepasan los límites de la crítica sana y rayan en la falta de respeto a los magistrados que integraban ese foro. Específicamente, nos referimos a los enunciados en torno a que los jueces del Panel VI de la Región Judicial de Ponce practicaron un quehacer jurídico deforme, participaron de una visión distorsionada de la función judicial y fueron sonámbulos que caminaron por terreno minado. Esas expresiones constituyeron un ataque infundado, desproporcional e irrespetuoso a la capacidad de estos jueces para llevar a cabo sus funciones y, con o sin intención, menospreciaron el prestigio y la labor que ellos realizaron.

Los jueces deben lidiar a diario con las diferencias de criterio existentes entre sus compañeros, ya sea por el manejo de los asuntos en sala, o en la interpretación y

aplicación del Derecho. Como consecuencia, deben tener la capacidad de manejar esas diferencias y sobrellevarlas de forma ecuánime y sosegada sin llegar al punto de realizar expresiones ofensivas e irrespetuosas. En este incidente, el juez Candelaria Rosa no supo lidiar con la divergencia de juicio de manera cordial, serena, prudente y respetuosa. El contenido de su resolución de inhibición transcendió la mera defensa de un punto de vista y supuso un ataque a la capacidad de los jueces que revocaron su dictamen. Los jueces tienen la prerrogativa de defender sus respetivos criterios, pero no pueden perder de perspectiva su deber hacia la sociedad que exige mantener la serenidad y cordialidad en todo momento para enaltecer el puesto que ocupan.

Conforme reconoció el propio juez Candelaria Rosa, sus expresiones oficiales en la resolución de inhibición pueden interpretarse de forma ofensiva y contrarias al respeto que merecen sus compañeros jueces. Memorando de Derecho, pág. 9. Así las interpreta este Tribunal. Por ende, el juez Candelaria Rosa no demostró el respeto y la consideración que exige su cargo y que merecen todos los integrantes de la judicatura. Con su conducta laceró los Cánones 6 y 14 de Ética Judicial, supra. Conviene enfatizar que los cánones mencionados "no se refieren a un comportamiento ideal, sino a las obligaciones más elementales que deben cumplir los encargados de ejecutar

nuestro sistema de justicia". <u>In re Hon. Ferrán Quintana</u>, 157 DPR 622, 631 (2002).

Ahora bien, entendemos que el juez Candelaria Rosa no incurrió en conducta violatoria del Canon 23 de Ética Judicial, <u>supra</u>. Ese canon se limita a conducta en el contexto extrajudicial. Las infracciones imputadas al juez Candelaria Rosa surgen de las declaraciones contenidas en una resolución emitida como parte de un proceso judicial. Por lo tanto, este no violó las obligaciones de ese canon.

IV

El Canon 1 de Ética Judicial, 4 LPRA Ap. IV-B, C.1, establece que "los jueces respetarán y cumplirán la ley y serán fieles al juramento de su cargo". <u>Íd.</u> Según se desprende de los comentarios del Canon 1, <u>supra</u>, la norma que este precepto establece responde al interés en reconocer que el deber judicial trasciende la función de administrar o interpretar la ley y se establece con el objetivo de transmitir claramente la idea de que los jueces no están por encima de la ley y son los primeros llamados a respetarla y cumplirla. <u>Íd.</u> El historial de este canon demuestra que está inspirado en la obligación que impone el juramento de fidelidad y toma de posesión que deben prestar los funcionarios gubernamentales. Mediante este juramento, los miembros de nuestro sistema judicial asumen la obligación de defender y obedecer las leyes sin reserva mental ni propósito de evadirla. Art. 186 del Código Político de 1902, según enmendado, 3 LPRA

sec. 601. Asimismo, se comprometen a desempeñar fielmente los deberes de su cargo. Íd.

En esta misma línea, el Canon 3 de Ética Judicial, 4 LPRA Ap. IV-B, C.3, dispone, en su última oración, que "los jueces no abandonarán ni descuidarán las obligaciones de su cargo". Íd. Según se reconoce en sus comentarios, el Canon 3, supra, establece el carácter prioritario de las obligaciones de los jueces y prohíbe su abandono o descuido. Íd. Al mismo tiempo, se aclara que este deber de ejercer debidamente las funciones judiciales no solo se extiende a las obligaciones relacionadas a la resolución de casos, sino que también incluye todos aquellos deberes relacionados con el buen funcionamiento de los tribunales. Ese lenguaje se basa en el sexto principio de los Principios de Conducta Judicial de Bangalore, ONU, Comisión de Derechos Humanos, 59o. Sesión, Tema 11d, E/CN.4/65 (2003). Este expone, en lo pertinente, que un juez no exhibirá conductas incompatibles con el desempeño diligente de las obligaciones judiciales ("[*a*] *judge shall not engage in conduct incompatible with the diligent discharge of judicial duties*").

A su vez, el Canon 8 de Ética Judicial, 4 LPRA Ap. IV-B, C.8, dispone lo siguiente:

Canon 8. Desempeño de funciones adjudicativas

Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier

influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.

La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias.

Este canon enfatiza el principio de la independencia de criterio judicial que debe regir durante las funciones adjudicativas de los jueces. Esta norma pretende evitar que los jueces tomen decisiones "ensoberbecidos por el poder". In re Sierra Enriquez, supra, pág. 851; In re Cruz Aponte, supra, pág. 180. Además, su conducta debe excluir la apariencia de susceptibilidad a influencias políticas, religiosas y públicas, o cualquier otra motivación impropia. Como ya hemos expresado, "aunque la figura del juez está revestida de autoridad, esta no debe utilizarse indebidamente dentro o fuera del tribunal". In re Claverol Siaca, supra, pág. 189.

Un examen de la resolución de inhibición del juez Candelaria Rosa demuestra que este basó su inhibición en su inconformidad con el dictamen del Tribunal de Apelaciones. El magistrado dejó claro en el último párrafo de su resolución que se inhibía a base del Canon 20, supra, "[…] **sobre todo porque** este Tribunal participa y practica una concepción de Juez que tiene que ver con toda

la dignidad, gallardía y prudencia judicial, mientras que nada con la teoría de pusilanimidad judicial subyacente en la Sentencia del Tribunal de Apelaciones […]". (Énfasis suplido) Informe de la Comisión de Disciplina Judicial, pág. 11. En otras palabras, la razón principal por la cual el juez Candelaria Rosa decidió inhibirse de todos los casos donde participara el licenciado Pietri Torres fue que el Tribunal de Apelaciones revocó su determinación respecto al desacato que le impuso al letrado y lo sujetó al descargo de una "teoría de pusilanimidad judicial". El propio magistrado comunicó que se inhibió por eso "sobre todo".

La conducta del juez Candelaria Rosa al utilizar el recurso de inhibición en protesta contra el Tribunal de Apelaciones reflejó una seria desobediencia de su deber de desempeñar cabalmente sus funciones y su juramento de hacerlo fielmente. Invocar el inciso (i) del Canon 20 de Ética Judicial, supra, para fundamentar su inhibición con la consecuencia de evadir la decisión del foro apelativo intermedio no fue solo un uso incorrecto de ese recurso sino que, además, fue un subterfugio que demuestra un claro abandono y descuido de las obligaciones del cargo de juez del Tribunal de Primera Instancia. Este Tribunal, simple y sencillamente, no puede condonar semejante conducta.

Contrario a la Comisión de Disciplina Judicial, nos parece que la inhibición del juez Candelaria Rosa bajo

esta circunstancia fue la actuación menos prudente para proteger la confianza del Pueblo en la judicatura. Si bien la inhibición es un asunto que se produce dentro de la conciencia moral de un juez en aras de proteger las instituciones de justicia y la confianza en la integridad del sistema judicial, no debe procurarse como mosqueo por una revocación y, mucho menos, como escudo para no tener que obedecer a un tribunal revisor. En ese sentido, la conducta del juez Candelaria Rosa, a todas luces, es contraria a la esencia de nuestro sistema judicial jerárquico, cuyo funcionamiento depende de que las decisiones de los tribunales de mayor jerarquía sean acatadas y puestas en vigor por los jueces de los foros de jerarquía inferior. Permitir una actuación en contrario supondría un sistema judicial disfuncional, carente de todo orden y efectividad. Cuando un juez decide abandonar los procedimientos que tiene asignados porque un tribunal apelativo no comparte su razonamiento, crea un disloque en el funcionamiento del sistema que pone en jaque la propia administración de la justicia. La autoridad y legitimidad del Poder Judicial descansa, necesariamente, en el acatamiento de sus decisiones y mandatos. Más aún, la confianza pública en la Rama Judicial, sin lugar a dudas, se afecta cuando un juez se retira de un caso porque, "sobre todo", no está conforme con la sentencia del foro de mayor jerarquía y no desea proceder según ordenado.

El juez Candelaria Rosa aduce que se inhibió para evitar la apariencia de arbitrariedad o prejuicio contra el licenciado Pietri Torres. No nos convence. Si ese fuera el motivo, ¿por qué esperó hasta la sentencia del Tribunal de Apelaciones para inhibirse y no lo hizo tan pronto ocurrió el incidente en sala con el licenciado Pietri Torres? La realidad es que desde la imposición de desacato hasta la resolución de inhibición no hubo ningún cambio, ni surgió otra situación, en la relación entre el letrado y el magistrado. Tanto el contenido de la resolución como las circunstancias fácticas nos llevan a concluir inexorablemente que el magistrado se inhibió porque lo revocaron. Debe quedar palmariamente claro que en este ejercicio no leemos la mente del juez Candelaria Rosa sino que nos limitamos a lo que él mismo escribió en su resolución de inhibición. De esta manera, resulta innecesario elucubrar sobre el proceso reflexivo e indagar en el análisis mental que lo llevó a inhibirse pues el juez plasmó sus razones expresamente en tinta y papel.

Los deberes del puesto del juez Candelaria Rosa demandaban obedecer el mandato del Tribunal de Apelaciones sin reservas y continuar con el cabal desempeño de sus funciones sin abandonarlas abruptamente por una insatisfacción personal con el dictamen del foro de jerarquía mayor.

V

Tras un análisis ponderado de las circunstancias de este procedimiento así como de las actuaciones del juez Candelaria Rosa, concluimos que violó los Cánones 1, 3, 6, 8 y 14 del Código de Ética Judicial, supra, mas no así el Canon 23, supra. La conducta que hoy analizamos se aparta de los principios básicos que establecen esos Cánones de Ética Judicial y que requiere nuestro sistema judicial para un funcionamiento adecuado. Tolerar este tipo de desobediencia provocaría el colapso de la estructura jerárquica de la Rama Judicial, integrada por tribunales primarios y tribunales apelativos revisores.

Dado que las actuaciones del juez Candelaria Rosa resultan claramente incompatibles con su cargo, procede su suspensión de empleo y sueldo. Ahora bien, tras considerar que esta es la primera vez que el magistrado es objeto de un señalamiento ético y evaluadas las excusas que ofreció por sus palabras, ordenamos que la suspensión inmediata de empleo y sueldo se extienda por un plazo de tres meses.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos Candelaria Rosa

AD-2015-1

SENTENCIA

En San Juan, Puerto Rico, a 1 de marzo de 2017.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia y tras un análisis ponderado de las circunstancias de este procedimiento así como de las actuaciones del juez Candelaria Rosa, concluimos que violó los Cánones 1, 3, 6, 8 y 14 del Código de Ética Judicial, mas no así el Canon 23, 4 LPRA Ap. IV-B. Por lo anterior, ordenamos la suspensión inmediata de empleo y sueldo por un plazo de tres meses del Juez Candelaria Rosa.

Lo acordó y ordena el Tribunal, y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre con el resultado y hace constar la siguiente expresión: "Examinada la *Resolución de Inhibición* emitida por el Hon. Carlos Candelaria Rosa, coincido con la Opinión *Per Curiam* en cuanto a que las expresiones del Juez violentaron lo dispuesto en los Cánones 6 y 14 de Ética Judicial, 4 LPRA Ap. IV-B. Sin embargo, no estoy de acuerdo con el análisis expuesto en el acápite IV de la Opinión por los fundamentos que expresé en el Voto Particular Disidente que emití en

<u>In re: Hon. Carlos Candelaria Rosa</u>, 194 DPR 198, 201-209 (2015). Por lo tanto, considero que procede suspender al Juez Candelaria Rosa por el término de tres meses por violar los Cánones 6 y 14, mas no los Cánones 1, 3 y 8 de Ética Judicial, <u>supra</u>". La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita. El Juez Asociado señor Colón Pérez disiente con opinión escrita. El Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Estrella Martínez no intervienen.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Hon. Carlos Candelaria Rosa

**Núm.** AD-2015-1

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 1 de marzo de 2017

> "Los siglos pasan y la gente sigue escuchando la voz de Shaharazad." Jorge Luis Borges[2]

Una vez más me veo obligada a disentir de la sanción que este Tribunal le impone a un miembro de la judicatura. En esta ocasión discrepo, por entender que los jueces que componen la mayoría han sido injustificadamente punitivos. A mi juicio, la conducta que hemos evaluado del Hon. Carlos Candelaria Rosa no amerita, como sanción, la separación de empleo y sueldo por un periodo de tres meses. Considero que este proceder se fundamenta en consideraciones exógenas a la prueba que obra en el expediente del proceso disciplinario en cuestión y, por consiguiente, se aleja del principio de proporcionalidad que debe guiar las sanciones disciplinarias a imponerse. Por tanto, disiento.

---

[2] Jorge Luis Borges, "Las Mil y Una Noche" en *Siete Noches*, Alianza Editorial, 2002.

I

El 13 de octubre de 2010, en la sala del Juez Carlos Candelaria Rosa, se llevó a cabo una vista con relación al caso *Pueblo v. Héctor Cordero Cruz e Ilka L. Cruz Rosario*, JSC2008G0337. Durante los procesos, se suscitó una discusión entre los representantes del Ministerio Público y los abogados de la defensa. En consecuencia, el Juez Candelaria Rosa ordenó a los representantes de ambas partes que se sentaran en sus respectivas bancas, en silencio. No obstante, uno de los abogados de defensa, el Lcdo. Armando F. Pietri Torres, se mantuvo de pie.

Tras considerar que el proceder del licenciado Pietri Torres constituyó una afrenta al decoro, solemnidad y respeto debido al Tribunal, el 13 de octubre de 2010, el Juez Candelaria Rosa emitió una *Sentencia* en la que lo encontró incurso en desacato y le impuso una pena de diez (10) días-multa. Inconforme, el licenciado Pietri Torres recurrió ante el Tribunal de Apelaciones. El 17 de diciembre de 2010, el foro apelativo intermedio emitió una *Sentencia* en la que revocó la determinación del Juez Candelaria Rosa. En esencia, concluyó que el incidente no tenía la gravedad que el foro primario le atribuyó.

Posteriormente, el 13 de enero de 2011, el Juez Candelaria Rosa emitió una *Resolución de Inhibición*. En ésta, en primer lugar, consignó su inconformidad con la determinación del Tribunal de Apelaciones. A esos efectos,

realizó diversas expresiones que tenemos la obligación de

reproducir. A saber:

> Soy del criterio de que la Sentencia del Tribunal de Apelaciones trasluce que el panel actualmente designado a Ponce, tal vez sin saberlo, participa de una noción distorsionada de la función judicial que propone un paradigma de Juez pusilánime, que no se ajusta a nuestro sistema de justicia pues se aleja del ideal de equilibrio reflexivo contenido en la prudencia, que es la virtud de umbral requerida a los jueces . . .
>
> No obstante, la Sentencia del Tribunal de Apelaciones se decanta por dicho modelo de pusilanimidad judicial, a lo mejor sin cobrar noticia de ello, aunque no por inadvertida deja de tener tal noción judicial el mismo efecto adverso . . . [n]o cabe dudas de que la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez al que aquí se hace alusión. La posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a Trías en cuanto a que "[e]l Juez sonámbulo camina por terreno minado".
>
> Más aún, dicho concepto de Juez timorato generado por la Sentencia del Tribunal de Apelaciones tiene el efecto de animar el irrespeto ya que, como advierte Dworkin, lo jurídico es a fin de cuenta materia de derecho y derechos sancionados en un Tribunal . . . Aquí el Tribunal de Apelaciones adjudicó que el Lcdo. Pietri no tenía que obedecer las órdenes del Juez que suscribe, ergo, le confirió al abogado ese derecho y a este Tribunal el deber de conformarse. Estimo que esta norma deformada de quehacer judicial, inspirada en la concepción de Juez pusilánime que le sirve de sustrato, tiene vigencia actual y potencial porque planeará sobre los casos futuros en los que intervenga el Lcdo. Pietri ante este Tribunal. Si no por sus propios términos, porque la designación del panel de Jueces de Apelaciones que le ha generado aconteció tan reciente como el pasado 13 de diciembre de 2010 mediante la orden Núm. DJ 2010-440 y con toda probabilidad permanecerá inalterado, a la vez que presto a reproducir su angustiosa concepción de apocamiento judicial. *Pueblo v. Armando F. Pietri Torres*, JSC2088G033,

*Sentencia* de 13 de octubre de 2010, en las págs. 2-3.

Por otro lado, el Juez Candelaria Rosa aseveró que emitió la referida *Resolución* al amparo del Canon 20 (i) *del Código de ética judicial*, 4 LPRA Ap. X, C. 20 (i). Así, particularizó, que se inhibiría -*motu proprio*- de todos los casos en que participara el licenciado Pietri Torres. Como fundamento para su proceder, expresó que:

> Resulta palmario que la ostensible sumisión del criterio judicial a la voluntad irrestricta de acatar o no órdenes judiciales conferida por la Sentencia del Tribunal de Apelaciones al Lcdo. Pietri, mina la confianza pública en el sistema de justicia, que tiene como base fundamental la independencia judicial y el consecuente poder de dirigir el curso de los trabajos en una Sala de Justicia. Asimismo, la privación de autoridad que la Sentencia Revocatoria perpetra a este Tribunal con respecto al Lcdo. Pietri para, entre otras cosas, ordenar su desempeño con alguna pretensión de acatamiento, podría tener el efecto de arrojar dudas sobre la imparcialidad del Tribunal en futuros casos de éste, tanto porque el Ministerio Público pueda especular que el Tribunal esté impedido de actuar con respecto a dicho abogado, como porque acusados de delito puedan especular que el Tribunal mantenga alguna animosidad contra el mismo. *Id.*, pág. 4.[3]

---

[3] El Juez Candelaria Rosa hizo constar en el último párrafo de la *Resolución* que:

> En consecuencia, a base del referido Canon 20 (i), y sobre todo porque este Tribunal participa y practica una concepción de Juez que tiene que ver todo con la dignidad, gallardía y prudencia judicial, mientras que nada con la teoría de pusilanimidad judicial subyacente en la Sentencia del Tribunal de Apelaciones, resulta forzoso resolver la **INHIBICIÓN** *motu proprio* de quien suscribe en todos los casos en que esté involucrado el Lcdo. Armando F. Pietri Torres *Resolución de inhibición* de 13 de enero de 2011, en la pág. 4. (énfasis en el original).

Así, pues, el Juez Candelaria Rosa hizo constar que decidió inhibirse con tal de evitar cualquier duda sobre la imparcialidad del tribunal.

Una vez el Tribunal de Apelaciones advino en conocimiento de la referida resolución, el 2 de febrero de 2011, emitió una *Resolución* en la que -en esencia- concluyó que las expresiones del Juez Candelaria Rosa fueron "dirigidas a cuestionar la integridad y capacidad profesional de los Jueces que integran este Panel". Por tanto, el Tribunal de Apelaciones ordenó que se le notificara el asunto al entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton. En consecuencia, el 22 de febrero de 2011, el Juez Presidente refirió el asunto a la ex Directora Administrativa de los Tribunales, Hon. Sonia Vélez Colón, para que se comenzara una investigación a tenor con la Regla 5(c) de las *Reglas de Disciplina Judicial de 2005*, 4 LPRA Ap. XV-B, R. 5(c).

El 15 de octubre de 2013, la División de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT), presentó un informe de investigación. En éste, alertó que el Juez Candelaria Rosa incurrió en una posible violación de los Cánones 6, 8 y 14 de los *Cánones de ética judicial*. A pesar de ello, el 20 de noviembre de 2013, la Directora Administrativa le cursó una comunicación a éste en la que hizo constar que se había determinado archivar el asunto. En esencia, tal proceder se fundamentó en que las expresiones en cuestión no trascendieron el ámbito del

proceso judicial y que los derechos de las partes no se vieron afectados.

Acaecidos numerosos trámites procesales, el 24 de octubre de 2014, **un año más tarde del archivo**, el Lcdo. Carlos J. López Feliciano, ex miembro del Panel del Tribunal de Apelaciones quien solicitó originalmente la investigación en contra al Juez Candelaria Rosa, requirió la reconsideración del archivo de la queja.[4]    En

---

[4] En *Ex parte: López Feliciano*, 191 DPR 882 (2014), una mayoría de este Tribunal emitió una *Resolución* en la que determinó que el licenciado López Feliciano era una parte promovente del procedimiento disciplinario. En ese entonces, nos vimos obligados a unirnos a la Opinión Disidente que emitió la entonces Jueza Presidenta, Hon. Liana Fiol Matta. Ello, habida cuenta de que el procedimiento disciplinario fue iniciado mediante el mecanismo contemplado en la Regla 5(c) de las *Reglas de Disciplina Judicial*. En consideración a esto, entendimos que el licenciado López Feliciano no podía ser parte promovente debido a que el inicio del procedimiento disciplinario era discrecional del entonces Juez Presidente. Esta actuación de la mayoría supuso una desviación de lo que hasta entonces habían sido estos procesos disciplinarios.

Luego de que el licenciado López Feliciano presentara la referida reconsideración, continuó latente nuestra preocupación sobre el particular. Por tanto, y considerando que éste había cesado en sus funciones judiciales, nos preguntamos: ¿Con qué legitimación éste puede revisar un dictamen interno e institucional de la Rama Judicial? Las acciones del licenciado López Feliciano parecen obedecer más a consideraciones personales que institucionales. Reiteramos que el proceso disciplinario que nos atañe se comenzó por virtud de la Regla 5 (c) de las *Reglas de Disciplina*. Ello, necesariamente, impedía que el licenciado López Feliciano fuera considerado parte promovente y, por consiguiente, que presentara la reconsideración en cuestión. Lamentablemente, al darle curso a su actuación, una mayoría de este Tribunal le imprime validez a "una definición redundante e innecesaria de lo que significa ser parte promovente en un proceso disciplinario contra un
(continúa...)

consecuencia, el 31 de octubre de 2014, la entonces Directora Administrativa de los Tribunales, Hon. Isabel Llompart Zeno, ordenó a la Oficina de Asuntos Legales de la OAT que comenzara una investigación disciplinaria en contra del Juez Candelaria Rosa.

El Juez Candelaria Rosa compareció el 10 de diciembre de 2014. En su comparecencia expresó qué:

> Con el mayor respeto, humildad y arrepentimiento, el Juez Candelaria Rosa reconoce que sus expresiones pudieron haber ofendido a compañeros jueces. No obstante, no fue su intención cuestionar la integridad o capacidad de éstos en tan honroso ministerio. Con sus expresiones, el Juez Candelaria Rosa únicamente intentó exponer las razones por las cuales su inhibición constituía la mejor forma de salvaguardar la imagen de justicia e imparcialidad del Tribunal. Para éste, con su inhibición se erradicaba toda apariencia de que los eventos acaecidos ocasionaran una incorrecta impresión de animosidad por parte de éste hacia el Licenciado Pietri Torres.
>
> El compareciente también reconoce su inconformidad con el razonamiento judicial, fundamentos y conclusiones contenidos en la resolución revocatoria dictada por el Tribunal

---

miembro de la Judicatura". *Ex parte: López Feliciano*, 191 DPR en las págs. 912-913 (Fiol Matta, J., Op. disidente).

Por otro lado, hacemos constar que, posterior a la acción del licenciado López Feliciano, la Hon. Olga E. Birriel Cardona, Jueza del Panel del Tribunal de Apelaciones en cuestión y quien no había solicitado acción alguna hasta ese momento, **sorprendentemente** solicitó la reconsideración del archivo de la queja. Ambas actuaciones ameritan una profunda reflexión, a mi juicio, de parte de éstos. Consideramos que los jueces debemos tener la piel recia y firme y no debemos permitir que lo que consideremos una ofensa personal -aunque válidamente podamos sentirnos ofendidos- se convierta en una cruzada inquisitorial contra los infieles. Los procedimientos disciplinarios no se pueden convertir en un mecanismo para dilucidar rencillas personales.

de Apelaciones. Tal disensión, sin embargo, de ninguna manera constituyó ni debe entenderse como un reto a la autoridad del Tribunal de Apelaciones ni al orden jerárquico de nuestro sistema de Tribunales. Las expresiones de éste nunca conllevaron la intención de faltar el respeto, cuestionar la integridad y capacidad de los compañeros Jueces o mancillar la imagen judicial, sino más bien consecuencia de una opinión subjetiva con un estilo de redacción disquisitivo y metafórico que aseguramos no se volverá a repetir. *Apéndice del Informe de Investigación de la Oficina de Asuntos Legales de la OAT de 4 de febrero de 2015*, pág. 119.

Por último, destacó que el procedimiento disciplinario era el primero en su contra y se comprometió en ser más cuidadoso y prudente al redactar sus expresiones.

Tras realizar la investigación de rigor, el 4 de febrero de 2015, la Directora Administrativa presentó ante la Comisión de Disciplina Judicial un nuevo informe preparado por la Oficina de Asuntos Legales de la OAT. En éste, se concluyó que las expresiones que realizó el Juez Candelaria Rosa podrían constituir violaciones a los *Cánones de ética judicial*. "Ello, pues, las mismas pudieran considerarse críticas infundadas que tiendan a menospreciar el prestigio de sus compañeros jueces, así como alejarse de la serenidad y prudencia requerida, y de respeto mutuo y cordialidad que debe existir entre jueces conforme lo establecido en los Cánones 6, 8 y 14 de Ética Judicial". *Informe de Investigación de la Oficina de Asuntos Legales de la OAT de 4 de febrero de 2015*, pág. 10. En fin, destacó que el juez podía discrepar de la determinación del Tribunal de Apelaciones, empero, el lenguaje que empleó para así hacerlo demostró "falta de

prudencia, circunspección y temperamento judicial". *Id.* Por tanto, se recomendó referir el asunto a la Comisión de Disciplina Judicial.

El 5 de febrero de 2015, la Presidenta de la Comisión de Disciplina Judicial, Hon. Aída N. Molinary de la Cruz, refirió el asunto a la Lcda. Delia Lugo Bougal, Comisionada. Ésta concluyó que existía causa probable para imputarle al Juez Candelaria Rosa la violación de varios *Cánones de ética judicial.* En consecuencia, el 2 de marzo de 2015, la Oficina de Asuntos Legales de la OAT presentó la correspondiente querella. En ésta, se le imputaron al Juez Candelaria Rosa cargos por violación a los Cánones 6, 8, 14 y 23. En síntesis, se concluyó que las expresiones del Juez Candelaria Rosa se alejaron de la serenidad y prudencia requerida, así como del respeto mutuo y cordialidad que debe existir entre los jueces. Asimismo, se determinó que la actuación de éste evidenció falta de prudencia, circunspección y temperamento judicial. Por otro lado, se consideró que, al ser la resolución de inhibición un documento público, se afectaba la imagen que debe preservar la judicatura con tal de gozar del respeto y confianza del público en general. Por ende, se le solicitó a este Tribunal que emitiera la sanción que estimara procedente.

Luego, el 8 de septiembre de 2015, la Comisión de Disciplina Judicial emitió su informe. En éste, concluyó que el Juez Candelaria Rosa no incurrió en conducta

constitutiva de infracción a los *Cánones de ética judicial* por las expresiones que consignó en su *Resolución de inhibición*. A esos efectos, la Comisión expresó que:

> Somos del criterio de que aunque las expresiones del juez Candelaria Rosa no fueron acertadas y que pudiera considerarse que se excedió en la forma vehemente de defender su posición, entendemos que no existe prueba clara, robusta y convincente de que hubo violaciones éticas que ameriten la imposición de una sanción disciplinaria en relación a los Cánones de Ética Judicial imputados. Tomando en consideración las circunstancias particulares de esta Querella, y el contenido de la expresión genérica sobre la función judicial, concluimos que un caso aislado no constituye prueba clara, robusta y convincente para establecer que hubo una violación a los Cánones de Ética Judicial por parte del juez Candelaria Rosa. Entendemos que lo ocurrido fue un error de juicio del juez Candelaria Rosa al momento de realizar unas expresiones en una Resolución de Inhibición, a lo que este ha hecho constar su arrepentimiento. *Informe de comisión de Disciplina Judicial*, pág. 20.

De otra parte, la Comisión hizo constar que figuró como parte de su análisis el que la controversia fuera el primer asunto de índole disciplinario que obraba en el expediente profesional del Juez Candelaria Rosa y que no existían quejas o querellas pendientes en su contra. Asimismo, se destacó que éste manifestó un sincero arrepentimiento por lo sucedido. En consideración a ello, la Comisión sugirió -en vez- que se le apercibiera a éste respecto a la cautela debida al emplear su estilo de redacción.

El 1 de octubre de 2015, el Juez Candelaria Rosa reaccionó al *Informe*. Expresó que el proceso acaecido resultó aleccionador y que éste presentó una oportunidad

de reflexión y crecimiento profesional. Así, pues, se allanó a la recomendación de la Comisión.

Reacia a disponer de la controversia, el 17 de noviembre de 2015, una mayoría de este Tribunal en un acto que celebra y evoca la obra del escritor mexicano Jorge Volpi, *Leer la mente*, emitió una *Resolución* en la que ordenó a la Comisión de Disciplina Judicial evaluar si **el motivo** del Juez Candelaria Rosa para el uso del mecanismo de inhibición *motu proprio* fue su insatisfacción con el dictamen del Tribunal de Apelaciones. Así, la Comisión debía determinar si éste incumplió con los Cánones 1, 3 y 8 del *Cánones ética judicial*.

Posteriormente, el 21 de diciembre de 2015, compareció el Juez Candelaria Rosa para exponer su posición al respecto. Al así hacerlo, expresó que:

> El compareciente afirma terminantemente que de forma alguna su inconformidad confesa para con la Resolución revocatoria del Tribunal de Apelaciones constituyó razón o fundamento para dictar su inhibición. Las expresiones empleadas por el compareciente en su resolución, lejos de pretender circunvalar el rigor del mandato emitido por el Tribunal de Apelaciones, o pretender una velada forma de librarse de la responsabilidad ministerial que le obligaba, constituyó la manifestación expresa de la pulcritud, trasparencia, imparcialidad y objetividad que éste guarda al sistema de justicia y garantiza a las partes, funcionarios y abogados. En realidad, en su Resolución sobre Inhibición el Honorable Juez Candelaria Rosa pretendió no más que, *precisamente*, consignar los fundamentos por los que a su mejor criterio su inhibición constituía la mejor forma de salvaguardar la imagen de justicia e imparcialidad del Tribunal, ello en ocasión de las circunstancias en las que tuvo lugar la imposición de desacato al Lic. Pietri Torres.

> Sobre el particular, al momento [de] imponer el desacato el Honorable Juez Candelaria Rosa lo hizo convencido de que ante sí se había configurado conducta que en efecto justificaba tal dictamen. Para el Honorable Juez Candelaria Rosa, la posterior revocación de dicho desacato, luego de concluido el caso penal donde aconteció, podría haber generado la incorrecta imagen de que éste fue impuesto por motivaciones personales que trascenderían a casos futuros. Para el compareciente, <u>eludir hasta la apariencia de tal posibilidad resultaba en un deber inalienable a su función judicial.</u> *Moción en cumplimiento de orden exponi[e]ndo posición* de 21 de diciembre de 2016, pág. 2 (énfasis en el original).

Por tanto, el Juez Candelaria Rosa solicitó que no se interpretaran sus expresiones como una afrenta al orden jerárquico de los tribunales, ni como un intento de evadir su responsabilidad de atender los casos ante sí. Así, reiteró que su proceder se fundamentó en el cumplimiento de su deber ministerial de salvaguardar la imagen del tribunal.

Por último, la Comisión de Disciplina Judicial emitió una *Resolución* el 3 de febrero de 2016. En ésta, expuso que:

> Tras un análisis ponderado de las circunstancias de esta querella, así como lo expuesto en su moción por el juez Candelaria Rosa, somos del criterio de que no existe evidencia clara, robusta y convincente de que el fundamento para la inhibición de éste, respecto a todos los casos en los que participara el licenciado Pietri Torres, haya sido su insatisfacción con la decisión emitida por el panel de jueces del Tribunal de Apelaciones el cual revocó el desacato impuesto. *Resolución* de Comisión de Disciplina Judicial de 3 de febrero de 2016, AD-2015-1, pág. 2.

## II

### A.

Una de nuestras más delicadas funciones en la administración de la Justicia es la de sentarnos como juzgadores de nuestros pares, los jueces de nuestro País. Como jueces del más alto foro en nuestro sistema judicial, tenemos la tarea ineludible de clarificar nuestro propio quehacer.

Para don Álvaro D´Ors, uno de los más afamados romanistas, el Derecho romano conjugaba en una, las palabras *ius:* Derecho y *iudicium:* juicio. Esa inexorable conexión *ius-iudicium*, implica que al juzgar declaramos el Derecho, que no es otra cosa que aplicar la técnica de lo bueno y lo justo o equitativo (*ius est ars boni aequi*). A. D´Ors, *Una introducción al estudio del Derecho*, Madrid, 1963, págs. 108-110. Véase además, A. Castresana, *Derecho Romano: El Arte de lo Bueno y lo Justo*, 2nda. Ed., Madrid, 2015.

Como juristas entonces, al juzgar, estamos llamados a discernir entre lo que es justo separado de lo injusto, y lo que es equitativo separado de lo que es irrazonable. No albergo duda alguna que hoy, al escoger la sanción a imponer, hemos fracasado en este empeño.

### B.

Comienzo señalando que coincido con la exposición y aplicación del Derecho que se consignó en la Opinión Mayoritaria sobre los Cánones 6 y 14 de *Ética judicial*.

Por lo tanto, coincidimos con su postura de que las expresiones del Juez Candelaria Rosa en su *Resolución de inhibición* contravinieron estos dos cánones. Asimismo, concordamos con él en que la conducta del Juez Candelaria Rosa no constituyó una inobservancia de los deberes que surgen del Canon 23. Ello no obstante, debo expresarme sobre la conclusión de la Opinión mayoritaria respecto la alegada infracción a los Cánones 1, 3 y 8 de *Ética judicial*, por cuanto es errónea.

El 17 de noviembre de 2015, una mayoría de este Tribunal emitió una *Resolución* en la que le solicitó a la Comisión de Disciplina Judicial que evaluara si el Juez Candelaria Rosa infringió los Cánones 1, 3 y 8 del *Código de ética judicial* al inhibirse *motu proprio* de aquellos casos en que compareciera el licenciado Pietri Torres. La Comisión determinó que no existía evidencia clara, robusta y convincente de que el fundamento para la inhibición de éste fuese su insatisfacción con la decisión del Tribunal de Apelaciones. Sin ambages, concluyó todo lo contrario. A esos efectos, comentó que

> se desprende que la inhibición del Juez Candelaria Rosa estuvo dirigida a salvaguardar la imagen de imparcialidad del sistema judicial, así como evitar cualquier apariencia de prejuicio o arbitrariedad en procesos judiciales futuros en los que participara el licenciado Pietri Torres. Fue su interés evitar que en casos futuros ni la Fiscalía ni el licenciado Pietri Torres pudiesen utilizar el incidente de la revocación del desacato por el Tribunal de Apelaciones para poner en entredicho sus actuaciones o determinaciones. Entendemos que su inhibición, por las circunstancias particulares del caso, fue la actuación más prudente para

proteger la confianza de la ciudadanía en la judicatura. Los Cánones de Ética Judicial, requieren que los jueces y juezas actúen de forma imparcial y excluyan toda apariencia de parcialidad. *Resolución* de 3 de febrero de 2016, pág. 3.

Considero acertadas estas expresiones y conclusiones de la Comisión. Reflejan, a mi entender, un juicio ponderado sobre los hechos en este caso. A pesar de ello, una mayoría de este Tribunal optó por descartar el análisis y la recomendación de la Comisión y, por el contrario, concluye que el Juez Candelaria Rosa incurrió en violaciones de los Cánones 1, 3 y 8 de *Ética judicial*.

La Opinión Mayoritaria sostiene su conclusión en un examen de la referida *Resolución de inhibición*. Lo cierto es sin embargo, que en esencia, sólo fundamentó su posición en el último párrafo de ésta. En este párrafo, en un acto de taumaturgia se logró descubrir lo que durante cinco (5) años evadió a todos los involucrados en el proceso disciplinario, a saber, la verdadera intención el Juez Candelaria Rosa. Esta facultad de clarividencia, de lograr leer la mente del Juez, faculta a la mayoría a hilvanar un conveniente relato sobre su verdadera intención. Un relato que, por su inventiva, rivaliza las maravillosas facultades narratológicas de Schaharazad.

A esos efectos, la Opinión Mayoritaria expresa que "la razón principal por la cual el Juez Candelaria Rosa decidió inhibirse de todos los casos donde participara el licenciado Pietri Torres fue que el Tribunal de Apelaciones revocó su determinación respecto al desacato

que le impuso al letrado y lo sujetó al descargo de una 'teoría de pusilanimidad judicial'". *Opinión Mayoritaria*, pág. 21.[5] Si bien es cierto que este Tribunal tiene la facultad de descartar, en parte o en su totalidad, el análisis y recomendación que realice la Comisión -más aún en casos donde la evidencia es documental- no corresponde tal proceder en este caso. Valga señalar lo obvio. Revelar la verdadera intención del juez querellado no es otra cosa que una transmutación en un ser sobrenatural con facultades omniscientes.

---

[5] Si bien es cierto que la expresión 'pusilánime' es una de mal gusto, no es menos cierto que, incluso, miembros de este Tribunal la han utilizado en documentos públicos para referirse a sus compañeros. A esos efectos, en *Trinidad v. E.L.A.*, 188 DPR 828 (2013), el Juez Asociado señor Rivera García hizo constar la siguiente expresión:

> En la nefasta opinión que hoy se certifica, una mayoría ha optado por navegar un curso de acción apresurado, sin que se haya presentado en los tribunales la prueba necesaria para establecer que las modificaciones al Sistema de Retiro constituyen la alternativa menos onerosa a la luz de la situación fiscal de Puerto Rico. Peor aún, so pretexto de atender una crisis, a fin de cuentas el resultado nos lleva inevitablemente hacia una hecatombe mayor. Con esta decisión, se conduce al servidor público a un estado de indefensión y se le condena a que viva al final de su carrera, en el ocaso de su existencia, al borde de la pobreza. Sin duda alguna, el Estado, haciendo uso de su poder, ha echado a un lado al empleado público que por años dedicó su vida al servicio del pueblo. <u>Ante la postura pusilánime asumida por cinco miembros de este Tribunal, no me queda más que disentir.</u> *Trinidad*, 188 DPR en la pág. 861 (Rivera García, Op. disidente) (énfasis suplido).

Claro está, en aquella ocasión, no hubo repercusión alguna por tal actuación.

Reiteramos que el Juez Candelaria Rosa, en todo momento -incluso en la precitada *Resolución de inhibición*-, hizo constar que el motivo de su inhibición era salvaguardar la imparcialidad del Tribunal. Esta postura se mantuvo inalterada a través de todas las comparecencias que éste realizó durante los cinco (5) años que han transcurrido desde el inicio del proceso disciplinario. Además, puntualizamos que, en ningún momento, tanto la División de Asuntos Legales de la OAT como la Comisión -en la querella, sus informes, comparecencias o resoluciones- esbozaron una interpretación distinta respecto a este particular.

Ello no obstante, una mayoría de esta Curia hace imputaciones en contra del Juez Candelaria Rosa en cuanto al uso del mecanismo de inhibición. A esos efectos, se sugirió que éste se inhibió como protesta en contra del Tribunal de Apelaciones y que tal actuación demostró desobediencia al desempeño cabal de sus funciones. Como mínimo, esta interpretación es desacertada. Por tanto, consideramos necesario matizar los principios jurídicos que orientan la inhibición.

## III

El mecanismo de inhibición existe en nuestro acervo jurídico desde el año 1904 en los Artículos 23 y 28 del *Código de Enjuiciamiento Civil*. Desde ese entonces, este Tribunal ha reconocido que:

> Es un principio de derecho universalmente reconocido que ninguna persona debe sentarse

como juez en su propio caso o en un caso en que esté materialmente interesado, o en que la parcialidad o el prejuicio sea motivo de incapacidad para que un juez intervenga en una causa. Aun en aquellos estados en que el prejuicio no constituye un motivo de incapacidad, cuando se formula el cargo y los hechos alegados indican la existencia de prejuicio, la corte cuidadosamente examinará los autos para determinar que no se ha cometido ninguna injusticia. Los estatutos de ese carácter tienen el propósito de otorgar a cada litigante un juicio imparcial y justo ante un juez desinteresado. El espíritu de nuestras leyes demanda que cada caso sea justa e imparcialmente juzgado y que ningún juez debe pensar en presidir en la vista de un caso en el cual su buena fe está tan seriamente cuestionada. *Peña v. García*, 45 DPR 44, 52 (1933) (citando a *Illinois Western Electric Co. v. Town of Cicero, 118 N.E. 733)*.

Esto, pues, los jueces tienen el deber de "preservar el respeto y la confianza del pueblo en nuestro sistema de justicia. Dicha encomienda requiere de los miembros de la Judicatura una conducta intachable que se caracterice por el más alto grado de imparcialidad e integridad y que responda a las normas que salvaguardan la independencia de su ministerio". *In re Grau Acosta*, 172 DPR 159, 164 (2007). Recordemos que, uno de los elementos esenciales de un juicio justo es la imparcialidad del ente adjudicador. Véase *Pueblo v. Toro Goyco*, 84 DPR 492, 499 (1962). Por consiguiente, "[l]os tribunales de justicia tenemos el deber de velar por que la 'balanza' en que se pesan los derechos de todos nuestros ciudadanos está siempre libre de sospechas, aun cuando las mismas sean infundadas". *Sucn. Ortiz Ortiz v. Campoamor Redin*, 125 DPR 106, 109 (1990).

En particular, el Canon 20 de los *Cánones de ética judicial* dispone sobre el mecanismo de inhibición. En lo que nos concierne, el inciso (i) establece que procede la inhibición "por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia". 4 LPRA AP. X, C. 20 (i). Entiéndase, este inciso contempla la procedencia de la inhibición por cualquier causa que razonablemente pueda arrojar dudas sobre la imparcialidad para adjudicar. En atención a esto, el Prof. José A. Cuevas Segarra nos explica que "[e]s una cláusula residual que permite ampliar los motivos para las recusaciones y debe interpretarse liberalmente, por tener un carácter remedial. No necesariamente se refiere a específicos tipos de conducta". José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil* 1851, T. V (2da ed. 2011).

Cabe destacar, además, que la Regla 63 de Procedimiento Civil tiene una disposición análoga. El inciso (j) de ésta dispone que procede la inhibición "por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia". 32 LPRA Ap. V, R. 63 (j). Al interpretar esta disposición, hemos precisado que un perjuicio o parcialidad personal se refiere, "necesariamente, [a] una actitud que se origina fuera del plano judicial, esto es, en el plano

extrajudicial". *Lind v. Cruz*, 160 DPR 485, 491 (2003). A esos efectos, para determinar si existe o no el perjuicio personal de parte del juez se tiene que realizar un análisis de la totalidad de las circunstancias. Véase *Ruiz v. Pepsico P.R. Inc.*, 148 DPR 586, 589 (1999). Véase, además, Cuevas Segarra, T. V, en la pág. 1852.

Por otro lado, precisamos que este Tribunal ha dispuesto que, para que proceda la inhibición al amparo de las precitadas disposiciones, no es imprescindible probar la existencia de un perjuicio o parcialidad de hecho. Véase *Ex parte: Andino Torres*, 152 DPR 509 (2000); *Pueblo v. Martes Olan*, 103 DPR 351 (1975). Ello, pues, "el juez no sólo debe ser imparcial, sino que también tiene que aparentarlo. Es decir, su conducta debe excluir toda apariencia de que es susceptibles de actuar a base de influencias de personas, grupos o partidos, o cualquier otra consideración o motivación impropia". *In re Ortiz Rivera*, 163 DPR 530 (2004).

Por último, es necesario subrayar que este Tribunal ha reconocido que ante la existencia de un perjuicio o parcialidad el Juez tiene la obligación de inhibirse. Por tanto, ello no es una mera prerrogativa. Véase *Martí Soler v. Gallardo Álvarez*, 170 DPR 1, 8 (2007) ("El Canon 20 de Ética Judicial ordena a los jueces que se inhiban en caso de perjuicio o parcialidad que les impida presidir un procedimiento judicial de la manera más justa, objetiva e imparcial".). Véase, además, Cuevas Segarra, T. V, en la

pág. 1860. No podemos olvidar que, en la búsqueda de salvaguardar la imparcialidad, el juzgador tiene que ser "previsor y analizar las posibles consecuencias de sus actos en términos que las impresiones que podrían recibir terceras personas . . . debe siempre estar muy pendiente de situaciones que puedan afectar negativamente su imagen y poner en duda su sano e independiente criterio judicial". *In re: Ortiz Rivera*, 163 DPR 530, 535-536 (2004).

## IV

En atención a lo anterior, reconocemos que la inhibición se determina en función de la conciencia moral del juez con tal de proteger la confianza en el sistema judicial. Coincido con la Opinión Mayoritaria cuando en ésta se sostiene que la inhibición no debe efectuarse para demostrar insatisfacción con un fallo revocatorio o con tal de esquivar las órdenes de un tribunal revisor. Véase *Opinión Mayoritaria*, pág. 22. Creo sin embargo que no procede aplicar tal razonamiento a los hechos de este caso.

Es esencial destacar que la determinación emitida por el Tribunal de Apelaciones se limita a revocar una sentencia de desacato emitida por el Juez Candelaria Rosa en contra de un profesional del Derecho. Por tanto, mediante este dictamen el foro apelativo intermedio no le ordenó a éste actuar de forma particular ni le prohibió el uso de las prerrogativas que ostenta como juez. Por tanto,

cabe preguntarse: ¿cómo la inhibición del Juez Candelaria Rosa lo lleva a desobedecer al Tribunal de Apelaciones? ¿Cómo la inhibición de éste impide que se mantenga en vigor una determinación del foro apelativo intermedio? La Opinión Mayoritaria, a mi juicio, no tiene respuestas convincentes a estas interrogantes. En vez, queda de manifiesto que, independientemente de que el Juez Candelaria Rosa se inhibiera, la determinación del foro apelativo se mantiene en pleno vigor. A saber, no pende contra el licenciado Pietri Torres una sentencia de desacato.

Por ello, ante los hechos particulares de este caso, la Opinión Mayoritaria se revela poco persuasiva al expresar que "[c]uando un juez decide abandonar los procedimientos que tiene asignados porque un tribunal apelativo no comparte su razonamiento crea un disloque en el funcionamiento del sistema que pone en jaque la propia administración de justicia". *Opinión Mayoritaria*, págs. 22-23. Nuevamente, coincidimos plenamente con la premisa articulada en la Opinión Mayoritaria, empero no está ante nuestra consideración una situación de tal envergadura. Es más, resulta evidente que el Juez Candelaria Rosa actuó en cumplimiento con sus deberes al inhibirse inmediatamente que se produjo, en su conciencia, aquel prejuicio que lo obligaba a proceder de tal forma. Reitero que, "[c]iertamente, el hecho de que exista una *sombra de parcialidad* que pueda 'poner en entredicho y causar un

gran daño a la imagen de la justicia en nuestra jurisdicción' *constituye motivo suficiente para la inhibición de un juez*". *Lind*, 160 DPR en la pág. 492 (citas omitidas, énfasis en el original).

Asimismo, resulta preocupante que el precedente que hoy sienta este Tribunal pueda propiciar un efecto paralizante entre los jueces respecto al uso del mecanismo de inhibición *motu proprio*. Según comentamos, el uso de este instrumento es un derecho que ostenta cada juez y obedece al llamado de su conciencia. Ciertamente, en nuestros Tribunales acaecen un sinnúmero de situaciones, en el furor de los procedimientos, que pueden conducir a un juez a inhibirse. Tal y como lo hizo el Juez Candelaria Rosa, un juez está facultado a inhibirse de uno o todos los casos en que esté involucrado un profesional del Derecho particular. Ello, pues, el juez está llamado a velar por la imparcialidad de su quehacer judicial y de no inhibirse oportunamente se produce el riesgo de que sus dictámenes, a favor o en contra de cualquiera de las partes, se interpreten como influenciados por aquellos perjuicios que se podrían producir durante el trámite de un caso. Así, pues, tenemos el deber de velar por la efectividad de las herramientas que se encuentran al alcance de los miembros de la judicatura.[6]

---

[6] De otra parte, ponerle trabas a las inhibiciones *motu proprio* de un juez, que decide inhibirse de todos los casos de un abogado en particular, pone en riesgo la eficacia misma de la tramitación de un caso. Aunque no es

(continúa...)

Por último, la Opinión Mayoritaria culmina su exposición puntualizando que hay una cercanía temporal entre la notificación de la *Sentencia* del Tribunal de Apelaciones y la *Resolución de inhibición* en cuestión. Entiéndase, la disidencia identifica una 'causa próxima' que justifica el proceder del Juez Candelaria Rosa. Según intimado, no es posible avalar el que los jueces utilicen el mecanismo de inhibición como subterfugio al orden jerárquico que rige nuestro sistema de justicia y los deberes que juraron acatar. Ahora bien, según el derecho aplicable, al evaluar la procedencia de una inhibición es necesario realizar un análisis de la totalidad de las circunstancias. Ello, aunque tal evaluación se efectúe en el contexto de un proceso disciplinario.

---

una situación directamente ante nuestra atención, consideremos –por un momento– las instancias en las que los profesionales del derecho utilizan el mecanismo de inhibición. No podemos ser tan ingenuos para pensar que todo abogado que presenta una moción de inhibición lo hace velando por el mejor interés del proceso judicial. Así, no nos debe sorprender que tal proceder se realice aprovechando una coyuntura muy puntual en un caso, para pedir la inhibición de un juez no porque verdaderamente crea que el juez tiene algún conflicto y no puede impartir justicia imparcialmente, sino porque la inhibición es el mecanismo idóneo para lograr un cambio de juez si se considera, por ejemplo, que quien atiende el caso es muy riguroso y exigente. De forma similar, la moción de inhibición presentada contra un juez se convierte, en ocasiones, en un mero mecanismo para dilatar la solución final de un caso. En consideración a que el juez de instancia es quien mejor conoce su foro, éste se encuentra en mejor posición para discernir cómo se debe reaccionar en estas circunstancias. Por ende, reitero que no podemos dificultarle a la judicatura el uso adecuado del mecanismo de inhibición, ya que desde esta torre de marfil, es muy difícil manejar las salas de los tribunales de instancia.

Al realizar este análisis, es preciso concluir que no surge del expediente evidencia clara, robusta y convincente para determinar, tal y como lo hace la mayoría, que la intención tras la inhibición del Juez Candelaria Rosa fue su insatisfacción con la determinación del foro apelativo intermedio.

Por último reconocemos que la Rama Judicial ha adoptado una política institucional de cero tolerancia, ante cualquier conducta que pueda lacerar la confianza que deposita la ciudadanía en el sistema de justicia. Véase *In re: Acevedo Hernández*, 194 DPR 344 (2015). No obstante, nuestra facultad disciplinaria debe ser ejercitada con gran celo. Véase *In re: Cancio González*, 190 DPR 290, 298 (2014). En consideración a que estimo improcedente imputarle al Juez Candelaria Rosa violación de los Cánones 1, 3 y 8 de los *Cánones de ética judicial*, por el contrario sólo procede censurarlo por su inobservancia con los deberes que se consagran en los Cánones 6 y 14.

Para determinar la sanción correspondiente es imprescindible velar por el principio de proporcionalidad. A esos efectos, aunque no hay un dictamen que trate una conducta exactamente igual, existen diversos casos donde hemos evaluado conducta impropia de jueces y abogados en contra de aquellos funcionarios que son parte del sistema judicial. En estos casos, como norma general, la sanción ha sido una censura. Véase *In re: Rodríguez Plaza*, 182 DPR 328 (2011); *In re: Saavedra Serrano*, 165 DPR 817 (2005),

*In re: Santiago Rodríguez*, 160 DPR 245 (2003); *In re: Barreto Ríos*, 157 DPR 352 (2002); *In re: Maldonado Torres*, 152 DPR 858 (2000).

De otra parte, recientemente, en *In re: Rafael Vissepó Vázquez*, 2016 TSPR 211, 196 DPR ___ (2016) (Resolución), examinamos la conducta de un juez que presuntamente se manifestó de forma intimidante, hostil y denigrante hacia individuos que comparecieron a su sala. En esa instancia, surgió del expediente que el Juez Rafael Vissepó Vázquez realizó expresiones en documentos públicos que realmente tenían el potencial de mancillar la imagen del sistema de justicia. Véase *In re: Rafael Vissepó*, 2016 TSPR en la nota 2 (Op. Concurrente, Colón Pérez).[7] No obstante, este Tribunal decidió archivar la queja

_____

[7] A manera de ejemplo, en una *Resolución* de 1 de abril de 2014, el Juez Vissepó Vázquez expresó, respecto a la conducta de varias profesionales del Derecho que comparecieron ante su sala, que "[m]e retiro voluntariamente de continuar presidiendo los procedimientos en este caso porque **quien está dispuesto a plasmar por escrito tanta falsedad e intenta destruir reputaciones de manera tan vil y despiadada, no está a la altura de comparecer ante mí a reclamar absolutamente nada**". *In re: Rafael Vissepó*, 2016 TSPR en la nota 2 (Op. Concurrente, Colón Pérez) (énfasis suplido). Por otro lado, en una *Resolución* de 24 de abril de 2014, éste comentó que "[e]n dicho escrito inicial, las licenciadas previamente mencionadas desarrollaron toda una **creativa y perversa historia, basada únicamente en ficción, mentira y un grado ilimitado de ocasionar daño a reputaciones, con total mala fe y ausencia de prueba**". *Id.* (énfasis suplido). Por último, destacamos que el Juez Vissepó Vázquez expresó que "[s]olo una tiranía intenta callar la justicia. Sólo la cobardía intenta ocultar la verdad. **Por ello no me cabe la menor duda que la mentira, llevada a grados de irracionalidad extrema como lo han hecho tres abogadas en este caso se pondrá en contra de ellas mismas**". *Id.* (Énfasis suplido).

presentada tras determinar que hubo ausencia de prueba clara, robusta y convincente. ¿Es que al vestir la toga merecemos un grado mayor de respeto que el que merece el litigante común y corriente que acude a nuestras salas en búsqueda de justicia? ¿Es que los jueces nos hemos convertido en dioses y los de apelaciones son Júpiter?

Por último, nótese que hemos censurado enérgicamente a otros jueces que, aunque han incurrido en conducta distinta a la que nos ocupa, han mostrado un sincero arrepentimiento y se han disculpado por sus actos. Véase *In re Claverol Siaca*, 175 DPR 177 (2009).

En consideración a lo anterior, estimo que procede censurar enérgicamente al Juez Candelaria Rosa por las expresiones que consignó en la *Resolución de Inhibición*, ello en atención a los Cánones 6 y 14 de los *Cánones de ética judicial*.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Carlos Candelaria Rosa        AD-2015-1

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 1 de marzo de 2017.

Nuevamente nos vemos en la obligación de disentir enérgicamente del curso de acción seguido por una mayoría de este Tribunal al momento de imponer una sanción disciplinaria en contra de un compañero juez o jueza por violaciones a los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B. **Hoy la falta de uniformidad, que lamentablemente ha permeado por años en este Tribunal al momento de imponer sanciones disciplinarias, alcanza niveles insospechados.**

En el presente caso, como explicaremos en detalle más adelante, tal como hemos hecho en casos similares al de marras, y como recientemente

hicimos en *In re Vissepó Vazquez*, 2016 TSPR 211, 196 D.P.R. ___ (2016), bastaba con censurar enérgicamente al Juez Carlos Candelaria Rosa (en adelante "Juez Candelaria Rosa"), y, en consecuencia, darle los apercibimientos de rigor.

Por no ser ese el curso de acción seguido por una mayoría de este Tribunal, la cual optó por, **de forma abusiva e injustificada**, suspender de empleo y sueldo al Juez Candelaria Rosa de su cargo como Juez de Apelaciones por un término de tres (3) meses, disentimos. Veamos.

I.

En síntesis, en el presente caso, el Juez Candelaria Rosa enfrenta un proceso disciplinario a raíz de ciertas expresiones que incluyó en su *Resolución* de *Inhibición* de 13 de enero de 2011, emitida en el marco de un procedimiento judicial que éste atendía. Las expresiones del Juez Candelaria Rosa tuvieron su génesis en la revocación, por parte del Tribunal de Apelaciones, de una determinación de desacato criminal que éste emitiera en contra del licenciado Armando Pietri Torres, un abogado de defensa que compareció a su sala. A raíz de dicha sentencia revocatoria, el querellado decidió inhibirse *motu proprio* de todos los casos en los que el licenciado Pietri Torres participase. Fue en la correspondiente *Resolución de Inhibición* que el Juez Candelaria Rosa realizó las expresiones que originaron el proceso disciplinario que nos ocupa. En lo pertinente, el Juez Candelaria Rosa señaló:

[R]esulta alucinante como desde el edificio del Tribunal de Apelaciones, ubicado en la Calle César González de San Juan, los Jueces miembros del panel apelativo que cubre el distante Centro Judicial de Ponce han podido aquilatar mejor, para disculpar, el comportamiento del Lcdo. Pietri, a pesar que en la sentencia de Desacato se certifica haber visto dicho proceder directamente y haberlo descrito como un enfrentamiento al Tribunal de pie, con gesto de desafío y arrogancia a la vez que con menosprecio al decoro, la solemnidad y el respeto debido.

[…]

Soy del criterio de que la Sentencia del Tribunal de Apelaciones trasluce que el panel actualmente designado a Ponce, tal vez sin saberlo, participa de una visión distorsionada de la función judicial que propone un paradigma de Juez pusilánime, que no se ajusta a nuestro sistema de justicia pues se aleja del ideal de equilibrio reflexivo contenido de la prudencia, que es la virtud de umbral requerida a los jueces.

[…]

No obstante, la Sentencia del Tribunal de Apelaciones se descanta por dicho modelo de pusilanimidad judicial, a lo mejor sin cobrar noticia de ello, aunque no por inadvertida deja de tener tal noción judicial el mismo efecto adverso. Lleva la razón Trías al decir que "[e]l Juez no podrá o no preocuparse por los problemas de la teoría de derecho, pero, quiera o no, tendrá consciente o inconscientemente intervendrá en la emisión de sus fallos." [Nota al calce número 4, Trías Monge, Teoría de la Adjudicación, Ed. UPR, San Juan, 2000, pág. 2] No cabe dudas de que en la conformidad del Tribunal de Apelaciones con la abierta desobediencia de una orden judicial irradia la noción castrada de Juez al que aquí se hace alusión. La posibilidad de que dicho Tribunal no haya advertido su propia teoría junto a las consecuencias de la misma corrobora también a Trías en cuanto a que "[e]l Juez sonámbulo camina por terreno minado." [Nota al calce número 5, Id., pág. 3].

Más aún, dicho concepto de juez timorato generado por la Sentencia del Tribunal de Apelaciones tienen el efecto de animar el irrespeto ya que, como advierte Dworkin, lo jurídico es a fin de cuentas materia de derechos y deberes sancionados en un Tribunal.

[…]

Aquí el Tribunal de Apelaciones adjudicó que el Lcdo. Pietri no tenía que obedecer las órdenes del juez que suscribe, ergo, le confirió al abogado ese derecho y a este Tribunal el deber de conformarse. Estimo que esta norma deformada de quehacer judicial, inspirada en la concepción de Juez pusilánime que le sirve de sustrato, tiene vigencia actual y potencial porque planeará sobre los casos futuros en los que intervenga el Lcdo. Pietri ante este Tribunal. Si no por sus propios términos, porque la designación del panel de Jueces de Apelaciones que la ha generado aconteció tan reciente como el pasado 13 de diciembre de 2010, mediante la Orden núm. DJ2010-440 y con toda probabilidad permanecerá inalterado, a la vez que presto a reproducir su angustiosa concepción de apocamiento judicial.

[…]

Resulta palmario que la ostensible sumisión del criterio judicial a la voluntad irrestricta de acatar o no órdenes judiciales conferida por la Sentencia del Tribunal de Apelaciones al Lcdo. Pietri, mina la confianza pública en el sistema de justicia, que tienen como base fundamental la independencia judicial y el consecuente poder de dirigir el curso de los trabajos en una Sala de Justicia. Asimismo, la privación de autoridad que la Sentencia Revocatoria perpetra a este Tribunal con respecto al Lcdo. Pietri para, entre las cosas, ordenar su desempeño con alguna pretensión de acatamiento, podría tener el efecto de arrojar dudas sobre la imparcialidad del Tribunal en futuros casos de éste, tanto porque el Ministerio Público pueda especular que el Tribunal esté impedido de actuar con respecto a dicho abogado, como porque coacusados de delitos puedan especular

que el Tribunal mantenga alguna animosidad contra el mismo.

En consecuencia, a base del referido Canon 20(i), y sobre todo porque este Tribunal participa y practica una concepción de Juez que tiene que ver con toda la dignidad, gallardía y prudencia judicial, mientras que nada con la teoría de pusilanimidad judicial subyacente en la Sentencia del Tribunal de Apelaciones, resulta forzoso resolver la INHIBICIÓN motu proprio de quien suscribe en todos los casos en que esté involucrado el Lcdo. Armando F. Pietri Torres. (Énfasis Suplido). *Informe de la Comisión de Disciplina Judicial*, págs. 9-11.

Al advenir en conocimiento del contenido de la aludida resolución de inhibición, el Panel de Jueces del Tribunal de Apelaciones que emitió la determinación que originó las expresiones del Juez Candelaria Rosa nos refirió el asunto. Posteriormente, las expresiones del Juez Candelaria Rosa fueron referidas al entonces Juez Presidente de este Tribunal, Hon. Federico Hernández Denton; quien a su vez refirió el asunto a la atención de la Hon. Sonia I. Vélez Colón, anterior Directora Administrativa de los Tribunales. Tras completar la investigación correspondiente, el 20 de noviembre de 2013, la entonces Directora Administrativa de los Tribunales, determinó que procedía archivar la queja contra el Juez Candelaria Rosa. Dicha determinación fue notificada al entonces Juez Presidente Hernández Denton, mas no a los jueces que originaron el referido al Tribunal Supremo.

Así pues, y producto de una comunicación recibida de parte del Lcdo. Carlos López Feliciano un (1) año posterior a la aludida decisión, este Tribunal determinó que, contrario al curso de acción seguido, dicha determinación de archivo debía notificarse a la parte promovente, es decir, a los jueces del Tribunal de Apelaciones que refirieron el asunto ante este Foro, *Ex parte Comunicación del Lcdo. Carlos J. López Feliciano*, 191 DPR 882 (2014).

Recibida la notificación en cuestión, el entonces Juez López Feliciano, uno de los promoventes del proceso, presentó una solicitud de reconsideración de la determinación de archivo. Evaluada dicha solicitud, la Oficina de Administración de los Tribunales (O.A.T.) acogió la misma, dejó sin efecto el archivo de la mencionada queja y ordenó el inicio de la investigación de rigor.

Oportunamente, el Juez Candelaria Rosa compareció ante la O.A.T. y, sobre los señalamientos en su contra, expresó:

> Con el mayor respeto, humildad y arrepentimiento, el Juez Candelaria Rosa reconoce que sus expresiones pudieron haber ofendido a compañeros jueces. No obstante, no fue su intención cuestionar la integridad o capacidad de éstos en tan honroso ministerio. Con sus expresiones, el Juez Candelaria Rosa únicamente intentó exponer las razones por las cuales su inhibición constituía la mejor forma de salvaguardar la imagen de justicia e imparcialidad del Tribunal. Para éste, con su inhibición se erradicaba toda apariencia de que los eventos acaecidos ocasionaran una incorrecta impresión de animosidad por parte de éste hacia el Licenciado Pietri Torres.

El comportamiento también reconoce su inconformidad con el razonamiento judicial, fundamentos y conclusiones contenidos en la resolución revocatoria dictada por el Tribunal de Apelaciones. Tal disensión, sin embargo, de ninguna manera constituyó ni debe entenderse como un reto a la autoridad del Tribunal de Apelaciones ni al orden jerárquico de nuestro sistema de Tribunales. Las expresiones de éste nunca conllevaron la intención de faltar el respeto, cuestionar la integridad y capacidad de los compañeros jueces o mancillar la imagen judicial, sino más bien consecuencia de una opinión subjetiva con un estilo de redacción disquisitivo [sic] y metafórico que aseguramos no se volverá a repetir. *Apéndice del Informe de Investigación de la Oficina de Asuntos Legales de la OAT de 4 de febrero de 2015*, pág. 119.

Realizada la investigación de rigor, siendo el asunto referido a la Comisión de Disciplina Judicial, y luego de varios trámites procesales no necesarios aquí pormenorizar, se autorizó a la O.A.T la presentación de una querella en contra del Juez Candelaria Rosa por posibles violaciones a los Cánones 6, 8, 14 y 23 de Ética Judicial, *supra*. En esencia, en la referida querella, se le imputó al Magistrado: 1) utilizar adjetivos tales como *pusilánimes*, *apocados* y *timoratos* para manifestar, en una *Resolución de Inhibición*, su malestar con el Panel del Tribunal de Apelaciones que revocó su determinación de desacato; 2) sostener que el Tribunal de Apelaciones había adoptado una *noción distorsionada de la función judicial*, un *modelo de pusilanimidad judicial*, una *angustiosa concepción de apocamiento judicial* y una *noción castrada de Juez*.

Luego de que las partes sometieran el asunto mediante memorandos de derecho ante la Comisión de Disciplina Judicial, dicho foro presentó su informe. Al así hacerlo, concluyó que en el presente caso no existía prueba clara, robusta y convincente de que el Juez Candelaria Rosa hubiese incurrido en violaciones éticas que ameritasen la imposición de sanciones disciplinarias. Para llegar a dicha conclusión, la Comisión se fundamentó, en parte, en que "*un caso aislado no constituye prueba clara, robusta y convincente para establecer que hubo una violación a los Cánones de Ética Judicial por parte del Juez Candelaria Rosa*". *Informe de la Comisión de Disciplina Judicial*, pág. 20. Por ello, la Comisión recomendó la desestimación y archivo de la querella en cuestión. *Íd*.

Recibido dicho Informe, este Tribunal determinó no acogerlo. Por el contrario, **en un raro e inusitado proceder**, determinó devolver la querella a la Comisión de Disciplina Judicial para que se determinase si con sus expresiones, el Juez Candelaria Rosa, violentó además los Cánones 1, 3 y 8 de Ética Judicial, *supra.* Ello por haber obedecido su inhibición a su insatisfacción con la determinación revocatoria de su determinación de desacato al licenciado Pietri Torres, por parte foro apelativo intermedio.

Luego del análisis correspondiente, **la Comisión de Disciplina Judicial determinó que tampoco existía evidencia**

**clara, robusta y convincente de que el fundamento para la inhibición del Juez Candelaria Rosa haya sido su insatisfacción con la decisión del Tribunal de Apelaciones.** Por el contrario, la Comisión concluyó que la inhibición *motu proprio* del Magistrado "*estuvo dirigida a salvaguardar la imagen de imparcialidad del sistema judicial, así como evitar cualquier apariencia de prejuicio o arbitrariedad en procesos judiciales futuros en los que participara el licenciado Pietri Torres*". *Íd.*, pág. 3. Como consecuencia de ello, por segunda ocasión, la Comisión recomendó desestimar y archivar la querella en cuestión. Así también nos recomendó que apercibiéramos al Juez Candelaria Rosa *de ser más cuidadoso en su estilo de reacción para evitar posibles ofensas en sus dictámenes*. *Resolución de la Comisión de Disciplina Judicial de 3 de febrero de 2016*, pág. 4.

Evaluados ambos informes, y a pesar de la falta de prueba clara, robusta y convincente que amerite la imposición de sanciones disciplinarias contra el juez Candelaria Rosa, este Tribunal **--en un proceso sumamente atropellado, en el cual, en un principio se había acordado censurar enérgicamente al Juez Candelaria Rosa y, en menos de setenta y dos (72) horas, se pierden los votos para ello, sin más--** resuelve que resulta improcedente la desestimación y archivo de la querella ante nos. Al así hacerlo, determina que el Magistrado violentó los Cánones 1, 3, 6, 8 y 14 del Código de Ética Judicial, *supra*, y, de

forma abusiva e injustificada, ordena su suspensión inmediata de empleo y sueldo por el término de tres (3) meses. Disentimos de ese errado proceder.

Y es que luego de evaluar no uno, sino dos informes rendidos por la Comisión de Evaluación Judicial, así como las comparecencias del Juez Candelaria Rosa, somos de la opinión de que la conducta desplegada por este, si bien se aparta de los Cánones de Ética Judicial, por su naturaleza, no amerita la imposición de sanciones severas como sería la suspensión de empleo y sueldo de su cargo por el término de tres (3) meses. Ello a la luz del principio de proporcionalidad que debe guiar a este Tribunal al momento de imponer sanciones a un compañero juez o jueza por violaciones a nuestro ordenamiento deontológico. Sí entendemos, no obstante, que procede censurar enérgicamente al Juez Candelaria Rosa por la conducta desplegada por él, así como realizarle los apercibimientos de rigor.

## II.

Como es sabido, este Tribunal posee autoridad exclusiva para atender los procedimientos disciplinarios relacionados con los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Artículo V, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico, Const. ELA, LPRA, Tomo 1. De conformidad con dicha autoridad, hace más de medio siglo, aprobamos --por primera vez-- los Cánones de Ética Judicial, *supra*, e impusimos ciertos deberes mínimos que los jueces y las

juezas debían cumplir con el propósito de promover la confianza de los ciudadanos y ciudadanas en nuestro sistema judicial. *In re Quiñones Artau, 193 DPR 356, 376 (2015); In re Sierra Enríquez*, 185 DPR 830, 850 (2012); *In re Claverol Siaca*, 175 DPR 177, 188 (2009).

Así pues, "*[d]esde su preámbulo, los Cánones de Ética Judicial reconocen la importancia de la función judicial y obligan a los jueces y juezas al compromiso y responsabilidad de imponerse restricciones a su conducta, tanto en la esfera de sus funciones judiciales como en otras actividades profesionales y personales.*" *In re Acevedo Hernández*, 194 DPR 344 (2015); *In re Berríos Jiménez*, 180 DPR 474 (2010); *In re Nevares Zavala*, 123 DPR 511, 524 (1989). La violación a lo dispuesto en los citados Cánones, conlleva la imposición de sanciones disciplinarias. Véase, Ley Núm. 201-2003, 4 LPRA sec. 25i.

Cónsono con ello, y en virtud de la autoridad constitucional de este Tribunal para disciplinar a los jueces y las juezas, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, *supra*, sec. 24 *et seq.*, dispone en su Artículo 6.001 las medidas disciplinarias a las que estos están expuestos, al incurrir en violaciones a los Cánones de Ética Profesional. Entre dichas medidas se encuentran la destitución del cargo, la suspensión de empleo y sueldo, limitaciones al ejercicio de la abogacía, ser objeto de una censura o amonestación, así

como cualquier otra medida remediadora que las circunstancias del caso ameriten imponer.

Al respecto, es menester indicar que, aun cuando en innumerables ocasiones hemos señalado que al momento de imponer medidas disciplinarias a un miembro de la judicatura, ante transgresiones a nuestro ordenamiento ético, este Tribunal goza de amplia discreción, por lo que el tipo de sanción puede variar, con igual vehemencia hemos sostenido que dicha discreción debe ser ejercida de manera consistente y racional. En ese sentido, en el contexto de los procesos disciplinarios contra jueces y juezas, al momento de determinar la sanción apropiada hemos expresado que **"casos similares ameritan sanciones similares"**. (Énfasis nuestro) *Véase,* Steidel Figueroa, *Ética y Responsabilidad del Abogado*, pág. 368-369 (2010); *In re González Acevedo y Pagán Pagán*, 165 DPR 81, 104 (2005). Ello es consecuencia lógica de que la amplia autoridad que este foro tiene en el ejercicio de sus facultades disciplinarias no puede ir a contrapunto de las garantías de debido proceso de ley que asisten a todo abogado y abogada, o juez y jueza objeto de un proceso disciplinario, y de que, para evitar la arbitrariedad, nuestra autoridad para sancionar debe estar sujeta a criterios racionales.

En este punto conviene recordar que la normativa deontológica antes expuesta no opera en el vacío. Esa exhortación a la búsqueda de consistencia y coherencia al

momento de imponer sanciones disciplinarias tiene su razón de ser.

Sobre ese particular, en *In re Díaz Alonso Jr.*, 115 D.P.R. 755, 760-761 (1984), al evaluar la facultad constitucional e inherente que tiene este Tribunal para reglamentar la profesión, resaltamos la importancia de que, en el descargo de esa responsabilidad, **"nos parece[ría] indicado el continuado desarrollo de una teoría moral sobre la conducta profesional. La permanencia y utilidad del sistema ético-profesional depende, en buena medida, de unos patrones o guías identificables en la jurisprudencia sobre la materia. [De ahí la importancia de, en el análisis de los casos ante nuestra consideración, hacer] […] referencia constante a la jurisprudencia y otras fuentes de derecho en ánimo de tratar faltas parecidas de modo análogo y mantener la reglamentación ético-profesional como cuerpo normativo coherente."** (Énfasis nuestro).

Vale la pena señalar aquí que el tema de la proporcionalidad de la sanción respecto la falta ética no solo es una aspiración de nuestro ordenamiento ético-profesional. Dicho tema ha sido, y continúa siendo objeto de amplio análisis en los Estados Unidos. Al respecto, véase a manera de ejemplo, Cynthia Gray, *Study of State Judicial Discipline Sanctions,* State Justice Institute (2002).

Así pues, siguiendo el principio de proporcionalidad en la sanción, como criterio que aspira a minimizar el

riesgo de arbitrariedad, conviene señalar que en la mayoría de los casos en que jueces, juezas, abogados y abogadas han incurrido en conducta similar a la incurrida por el Juez Candelaria Rosa, este Tribunal, **contrario a como hoy resuelve**, se ha limitado a censurar a las partes. Véanse, *In re Barreto Ríos*, 157 DPR 352 (2002)(censuramos enérgicamente a un abogado por insultar a personal administrativo del Tribunal); *In re Rodríguez Plaza*, 182 DPR 328 (2011)(censuramos a una juez por realizar expresiones burlonas e insultantes contra un alguacil); *In re Claverol Siaca*, 175 DPR 177 (2009)(censuramos a un juez por, entre otras cosas, conducta constitutiva de falta de respeto a funcionarios del Tribunal al utilizar lenguaje soez e irrespetuoso en reuniones oficiales y retar abiertamente a la Directora Administrativa de los Tribunales a través de sus funcionarios), y más recientemente, en *In re Vissepó Vázquez*, *supra*, **un caso en extremo similar al que nos ocupa**, este Tribunal ordenó archivar una querella instada en contra del Juez Vissepó Vázquez por ciertas expresiones verbales y escritas emitidas por este en el contexto de un proceso judicial que presidía[8]. No existen, pues, razones en el presente caso para tratar de un modo distinto al Juez Candelaria Rosa.

---

[8] En *In re Vissepó Vazquez*, *supra*, (Op. Concurrente Colón Pérez) destacamos como en su *Resolución* de 1 de abril de 2014 en cierto proceso judicial que presidía, el Juez Vissepó Vázquez expuso, en relación a la conducta de las licenciadas Magda Morales Torres, María I. Torres Alvarado y Ligia E. Santos Torres, entre otras cosas, lo siguiente:

"[…]
(continúa...)

Mi sentir y mi voluntad de actuar y tomar una decisión que no es fácil o agradable se fundamenta en dar finalidad a una breve historia, creativamente perversa, falsa y sustentada en la mala fe, cuya desgraciada pretensión va dirigida a mancillar reputaciones, inclusive de una servidora pública o secretaria de sala que ha servido con integridad, total compromiso y dedicación por décadas a la Rama Judicial.

[…]

**Me retiro voluntariamente de continuar presidiendo los procedimientos en este caso porque quien está dispuesto a plasmar por escrito tanta falsedad e intenta destruir reputaciones de manera tan vil y despiadada, no está a la altura de comparecer ante mí a reclamar absolutamente nada.**

[…]"

De otra parte, en su *Resolución* de 24 de abril de 2014 señaló:

"[…]

En dicho escrito inicial, las licenciadas previamente mencionadas desarrollaron toda una creativa y perversa historia, basada únicamente en ficción, mentira y un grado ilimitado de ocasionar daño a reputaciones, con total mala fe y ausencia de prueba.

[…]

Solo una tiranía intenta callar la justicia. Sólo la cobardía intenta ocultar la verdad. Por ello no me cabe la menor duda que la mentira, llevada a grados de irracionalidad extrema como lo han hecho tres abogadas en este caso se pondrá en contra de ellas mismas.

[…]

La seriedad de las falsas, impropias e irresponsables expresiones, señalamientos y acusaciones hacia este juez y personal del Tribunal, no solo motivaron mi inhibición si no que laceraron mi sentido de justicia e imparcialidad a partir de ese momento, en este caso en particular y con las abogadas a las que previamente he hecho referencia. **"El coraje no se puede simular, es una virtud que escapa a la hipocresía". Napoleón Bonaparte Francés.**

[…]

**"A la Sra. Justicia le gusta que la toquen, que la reformen, que la mejoren … pero nunca que la violen." Desconocido.**

[…]

En ninguna parte de mi escrito anterior fui irrespetuoso e impropio. Lamentablemente, las abogadas esperaban por parte de este juez sumisión o silencio con mi proceder y retiro. **Dicen que la justicia es ciega y yo añado …… pero no muda y menos cobarde."**

**<u>Es importante destacar que distinto al caso del Juez Candelaria Rosa en el que las expresiones que originan la querella en su contra parecen estar enmarcadas en una discusión teórica y metafórica sobre la función judicial y la visión adjudicativa que él defiende, en *In re: Vissepó Vázquez* las expresiones del querellado fueron dirigidas de manera personal y directa a abogados litigantes en un tono innecesario que</u>**

(continúa...)

III.

En ese sentido, precisa señalar que, contrario a lo intimado por una mayoría de este Alto Foro, este no es un caso que amerite la suspensión de empleo y sueldo del Juez Candelaria Rosa por el término de tres (3) meses. Dicha sanción, según explicáramos, no es proporcional con la conducta exhibida por el aludido Magistrado.

Al respecto basta con señalar que, en aquellas instancias en que este Tribunal ha impuesto a un juez o jueza una sanción fluctuante entre un (1) mes y aproximadamente un (1) año de suspensión de empleo y sueldo, lo ha hecho en escenarios muy distintos al caso ante nos. Particularmente en instancias que, entre otras, revelan deshonestidad, omisión en el descargo de responsabilidades judiciales con efectos adversos para los procesos judiciales o las partes, y uso inapropiado de facultades judiciales, como la imposición de desacato sumario, cuando denotan falta de temperamento judicial frente a abogados y litigantes. *Véanse*, a modo de ejemplo, *In re Sierra Enríquez*, 185 DPR 830 (2012); *In re Cruz Aponte*, 159 DPR 170 (2003); *In re Gonzalez Porrata-Doria*, 158 DPR 150 (2002); *In re Ferrán Quintana*, 157 DPR 622 (2002).

---

**dista del temperamento ejemplificante que debe mostrar todo integrante de nuestra judicatura frente a las partes y a sus representantes legales**.

De otra parte, es meritorio también recordar que este Tribunal ha reservado la sanción de la destitución de un juez o jueza de su cargo a aquellas conductas consideradas como extremadamente graves, principalmente aquellas tipificadas como delito (como lo son asesinato, agresión, uso y abuso de sustancias controladas, hostigamiento sexual, violencia doméstica, entre otros); o constitutivas de un abuso desmedido del poder judicial. *Véanse*, a modo de ejemplo, *In re Santiago Concepción*, 189 DPR 378 (2013); *In re Ruiz Rivera*, 168 DPR 246 (2006); *In re Robles Sanabria*, 151 DPR 483 (2000); *In re De Castro*, 100 DPR 184 (1971); *In re Brignoni, Juez*, 84 DPR 385 (1962); *In re Dávila*, 79 DPR 816 (1957).

Demás está decir que, el Juez Candelaria Rosa no ha incurrido en ninguna de las conductas antes reseñadas. En ese sentido, suspenderlo de empleo y sueldo por el término de tres (3) meses, como incorrectamente lo han decidido varios miembros de este Tribunal, resulta insostenible en derecho. Máxime, si tomamos en consideración las limitadas instancias y los hechos de los casos en que este Tribunal ha impuesto ese tipo de sansión.

Es, pues, a la luz de la normativa antes expuesta que procede atender las controversias traídas ante nuestra consideración en el proceso disciplinario que nos ocupa.

IV.

En el presente caso, como bien surge de los informes rendidos por la Comisión de Disciplina Judicial, y según surge de las propias comparecencias del Juez Candelaria Rosa, no existe controversia alguna en cuanto al contenido de las expresiones que este incluyó en su resolución de inhibición. Ello está del todo claro.

De otra parte, no tenemos duda alguna de que, con sus expresiones, el Juez Candelaria Rosa, infringió los deberes consagrados en los Cánones 6 y 14 de los Cánones de Ética Judicial, *supra*, que exigen del juez, entre otras cosas, un trato respetuoso y cordial para con sus pares y proscribe toda crítica infundada que implique menospreciar el prestigio de sus compañeros y compañeras. Canon 6 de Ética Judicial, *supra*. Así también se prohíbe todo aquel proceder que pueda afectar la dignidad y respeto debido al Tribunal. Canon 14 de Ética Judicial, *supra*.

Ahora bien, al evaluar detenida y desapasionadamente las referidas expresiones, la Comisión de Disciplina Judicial concluyó, en dos (2) ocasiones distintas, que éstas -- aunque desacertadas y desafortunadas -- típicas de un claro error de juicio por parte del Juez, se dieron en el contexto de un caso aislado, y no constituyen un patrón de conducta por parte del Juez Candelaria Rosa. Como cuestión de hecho, la Comisión de Disciplina Judicial llama la atención a que, el presente, constituye el primer

proceso disciplinario en contra de dicho Juez. Coincidimos con dicha apreciación.

Siendo ello así, y siguiendo lo dispuesto previamente por este Tribunal en casos en donde los jueces o juezas han incurrido en conducta similar a la incurrida por el Juez Candelaria Rosa, basta con censurar enérgicamente al referido magistrado y realizarle los apercibimientos de rigor. *Véanse*, como mencionamos anteriormente, *In re Barreto Ríos*, supra; *In re Rodríguez Plaza*, supra; *In re Claverol Siaca,* supra; *In re Vissepó Vázquez*, supra. A juicio nuestro, no existen razones en el presente caso para tratar de un modo distinto al Juez Candelaria Rosa.

Cabe cuestionarse ¿qué razones tienen varios miembros de este Tribunal para procurar un trato distinto para el Juez Candelaria Rosa? ¿Qué factores son los que verdaderamente están tomando en consideración al momento de imponer las sanciones disciplinarias? Las respuestas a estas interrogantes solo ellos las conocen.

Ante el cuadro fáctico y procesal que tenemos ante nos, quien suscribe solo puede señalar que lo dispuesto por una mayoría en el día de hoy en su voto para suspender de empleo y sueldo, por el término de tres (3) meses, al Juez Candelaria Rosa, no le convence. En ese sentido, nos reafirmamos en que lo que procede en el proceso disciplinario ante nos es censurar enérgicamente al Juez Candelaria Rosa y realizarle los apercibimientos de rigor.

V.

Por último, vale la pena recordar que, *"como todo ser humano, un juez o jueza puede experimentar momentos de frustración de cara a ciertos escenarios. Ello es así, pues, detrás de cada toga hay un ser humano, con sus defectos y con sus virtudes, susceptible a fallar"*. *In re Vissepó Vázquez, supra* (Op. Concurrente, Colón Pérez). El propio Juez Candelaria Rosa así lo ha reconocido. Este demostró haber reflexionado sobre su error al ofrecer sus disculpas y expresar que el proceso disciplinario que enfrenta ha sido aleccionador y que en un futuro sería más cauteloso con su estilo de redacción.

En sus comparecencias en el proceso disciplinario de epígrafe, el Juez Candelaria Rosa ha expresado que el propósito de sus expresiones en la *Resolución* de *Inhibición* era consignar los fundamentos que lo movieron a apartarse de los casos en los que intervendría el Lcdo. Pietri Torres. En este sentido indica que con su proceder pretendió salvaguardar la imagen de justicia e imparcialidad del Tribunal. Además, expresó que no fue su intención retar la autoridad del foro apelativo intermedio, ni el orden jerárquico de nuestro sistema de Tribunales. No encontramos, pues, motivos para no dar credibilidad a las razones expuestas por el Juez Candelaria Rosa.

Ahora bien, según hemos expresado en ocasiones anteriores, lo antes dicho, no debe ser óbice para que esta experiencia le sirva de lección al Juez Candelaria Rosa, de

forma tal que en un futuro sus expresiones --verbales y escritas-- hacia sus compañeros jueces y juezas, así como como hacia las partes, los abogados y las abogadas que ante él comparecen, se den en un ambiente de decoro, solemnidad y respeto. **Al fin y al cabo, al asumir el cargo judicial no se autoriza a una persona a decir, en el ejercicio de sus funciones, todo lo que como ciudadano siente y cree. Como jueces ejercemos una fracción del poder público que supone un estricto sentido de circunspección que nos obliga a trascender las pasiones del litigio, la estridencia ocasional del debate, la informalidad en el trato y a continuamente repensar nuestras acciones. No con la mentalidad de quien se cree poseedor de la verdad, si no desde el ánimo de quien para ser mejor juez lleva una lucha continua por replegar sus propias pasiones y prejuicios. Solo así lograremos acercarnos al ideal del *buen juez*.**

## VI.

Por todo lo anterior, en aras de ser consistentes al evaluar la conducta de un juez o jueza, y al determinar el tipo de sanción que amerita la transgresión de los Cánones de Ética Judicial, disentimos de lo resuelto por este Tribunal en el día de hoy. Por consiguiente, tal como ya hemos señalado, procedía censurar enérgicamente al Juez Candelaria Rosa por este haber infringido los Cánones de 6 y 14 Ética Judicial, *supra*. Cónsono con ello, le hubiésemos apercibido que, en adelante, en su desempeño como Juez de Apelaciones debe ser más cuidadoso y realizar sus

expresiones --verbales y escritas-- con el decoro, la solemnidad y el respeto debido a sus compañeros Jueces y Juezas y, particularmente, a las partes, los abogados y las abogadas que, día a día, comparecen ante él en busca de justicia.


                                        Ángel Colón Pérez
                                         Juez Asociado